In the Matter of the Application of David L. Nichols, one of the Assessors of the Town of New Haven, Oswego County, to Compel Horace Wells to Pay a Tax, etc.

For the purposes of taxation the residence of one liable to assessment for personal property will be deemed to continue where it has been until a change is affirmatively shown, or, at least, until there is satisfactory evidence of the abandonment of that place as a residence.

In proceedings under the act "regulating the collection of taxes and the proceedings in relation to unpaid taxes" (chap 318, Laws of 1842), to compel the payment of a tax, the assessor gave notice of a motion for an attachment, or for such other or further relief as the court may grant. Upon the hearing the defendant appeared by counsel, and presented his affidavit controverting the fact of his residence in the town. The court thereupon ordered a reference to a referee, to take and report the evidence, the motion meanwhile to stand over. Evidence upon both sides upon the question of residence was taken and reported, and,

upon the adjourned day, the court adjudged the defendant guilty of mis-conduct, imposed a fine, and directed his imprisonment until paid.

*Held* (LOTT, Ch. C., and GRAY, C., dissenting), that the motion having been heard without objection on the part of the defendant as to the form in which he was called upon to appear, it comes up at the final hearing as upon an order to show cause why he should not be compelled to pay the tax; that an order to show cause had only the effect of a notice, and after a litigation upon the merits it was too late to raise the question as to such defect in form, and that therefore it was not error in the court to proceed to determine upon the merits of the application without first issuing an attachment.

Also *held*, that in imposing the fine the adding of five per cent to the amount of the tax, besides the costs and expenses of the proceedings, was not error, inasmuch as by the act of 1847, amendatory of the act to reduce the number of town officers (sec. 16, chap. 455, Laws of 1847), it is provided that the town collector, in making return of unpaid taxes, shall add five per cent, which shall be collected with the unpaid taxes

(Argued March 19, 1873, decided June Term, 1873.)

APPEAL by Horace Wells from an order of the General Term of the Supreme Court, in the fifth judicial district, affirming an order at Special Term, adjudging said Wells to be guilty of misconduct in the non-payment of a tax, and imposing a fine therefor.

The order was made in a proceeding to enforce the pay-ment of taxes, instituted under the provisions of the act of April 12, 1842, entitled " An act in addition to the provisions of the Revised Statutes regulating the collection of taxes and the proceedings in relation to unpaid taxes."    (Laws of 1842, chap. 318, p. 408.)

In July, 1864, Horace Wells, the appellant, was assessed upon the assessment roll of the town of New Haven, in the county of Oswego, for $8,000 of personal property.

Upon this the board of supervisors levied a tax of $267.92.

In a special assessment made by the board for paying bounties to volunteers in March, 1865, the further sum of $75.46 was levied against the appellant for the $8,000 of personal property appearing upon the roll of 1864.

Neither of these assessments were paid.

For several years prior to April, 1863, Wells had resided

in New Haven, and had owned and carried on a farm in that town.

In April, 1863, he sold and conveyed his farm to Henry J. Daggett, who took immediate possession, and from that time until some time in December, 1863, Wells, who was unmarried, boarded with Daggett on the farm.

On or about the 14th day of June, 1864, Wells was taken sick at the house of Henry Matthews, his brother-in-law, in the city of Oswego, and was confined to the house by such illness until some time in the following August, and did not entirely recover until some time in October, 1864.

Mr. Wells remained with Mr. Matthews in Oswego until some time in the month of January, 1865, when he removed to Caledonia, in the county of Livingston, where he has since resided.

The assessor served upon Wells a notice of a motion at Special Term for an attachment as for a contempt, " or for such further or other relief as the court by order might think proper to grant, according to chapter 318, of the Laws of the State of New York, passed in 1842," which notice was accompanied with affidavits showing the above and other facts. Upon the hearing of the motion Wells appeared by counsel, and presented his affidavit, in which he stated that he became a resident of the city of Oswego in December, 1863, and continued such until he removed to Caledonia in January, 1865.

The court thereupon ordered the matter referred to a referee to take the evidence produced by either of the parties, and report the same, and ordered the motion to stand over to another Special Term, and then to be heard upon the papers and evidence reported.

The Supreme Court, at Special Term, decided that the defendant was not a resident of New Haven in March, 1865, and was not liable for the special tax assessed in that month, but decided that he was a resident of New Haven when the assessment roll was made in July, 1864, and was liable for the tax levied upon that assessment, and thereupon adjudged

said Wells to be guilty of a violation of his duty, and misconduct within the provisions of the statutes in such case provided, and imposed a fine of the amount of the tax, with five per cent added, and the costs and expenses of the proceedings, and directed him to be committed to jail until the same was paid.

*A. Perry* for the appellant. Defendant was not a resident of New Haven when the assessment was made, and it is consequently void. (1 R. S., 389, § 5; id., 390, §§ 7, 8; id., 393, §§ 19, 20; *People* v. *Supervisors of Chenango County*, 1 Kern., 563–572; *Mygatt* v. *Washburn*, 15 N. Y., 316, 320; *Clark* v. *Morton*, 3 Lans., 484; S. C., 58 Barb., 434.) It was not necessary for defendant to prove what place he intended to make his permanent residence. (*Whitney* v. *Sherborn*, 12 Allen [Mass.], 111; *Inhabitants of Wilbraham* v. *Inhabitants of Ludlow*, 99 Mass., 587.) The order of the Special Term was erroneous because defendant was never required, by order or notice, to show cause why he should not be punished. (Laws of 1842, p. 404, § 2; 2 R. S. [1st ed.], 534; id., 536, §§ 5, 12, 19; *Pitt* v. *Davidson*, 37 N. Y., 235, 242; *In re Smethhurst*, 2 Sandf., 724, 727; 1 Crary's N. Y. Practice in Special Proceedings, 190; *Albany City Bank* v. *Schermerhorn*, 9 Paige, 372, 376; *Matter Smethhurst*, 2 Sandf. [S. C.], 728; *McCredie* v. *Senior*, 4 Paige, 378.) The court did not acquire jurisdiction of the person of the defendant, and therefore the order for his arrest and imprisonment was unauthorized and void. (*Pitt* v. *Davidson*, 37 Barb., 97, 112; S. C., 37 N. Y., 235–243; *The People* v. *Nevins*, 1 Hill, 158.) The jurisdiction in this case is strictly statutory, and can only be acquired in the mode prescribed by statute. (*Cook* v. *Farren*, 34 Barb., 95; *Brisbane* v. *Peabody*, 3 How. Pr., 109; *Hallett* v. *Righters*, 13 id., 43; *Kendall* v. *Washburn*, 14 id., 380; *Wortman* v. *Wortman*, 17 Abb. Pr., 72; *Bloom* v. *Burdick*, 1 Hill, 130.) It will not be intended, it must appear from the record. (2 Cow. & Hill's notes, 946; *Embury* v. *Connor*, 3 Coms., 511, 523;

*Denning* v. *Roberts*, 11 Wend., 647; *Foot* v. *Stevens*, 17 id., 483, 488.).

*J. C. Churchill* for the respondent.

Johnson, C.   The first of July seems to be the time fixed by law for the ascertainment of the persons liable to be assessed. (*Mygatt* v. *Washburn*, 15 N. Y., 316; *Clark* v. *Norton*, 3 Lans., 484.)   Upon the evidence in this case it is my opinion that Horace Wells was at that date, in the year 1864, yet a resident of the town of New Haven, although he had gone to Oswego on the fourteenth of June for medical treatment, and had become too ill there to return to New Haven, if he had been desirous of doing so.   His undoubted residence had been in New Haven, and it must be deemed to have continued there until a change is affirmatively shown, or at least until there is satisfactory evidence of the abandonment of that place as a residence.   Upon the whole evidence I do not find satisfactory proof either of change or abandonment.   But if this were otherwise the provisions of the second section of chapter 176 of the Laws of 1851 (page 332) would still have required his assessment for personal property for the year ending July 1, 1864, in the town of New Haven. It was in that town that his principal business, his only business, indeed, so far as the case shows, had been transacted during that year.   Where that fact exists, the statute cited makes such town the proper place of taxation for personal property, though the person taxed may have had several other places of residence during the year.   The ground which has now been considered is the only one presented going to the liability of Wells for the tax imposed upon him.

The remaining questions relate to the procedure, under chapter 318 of the Laws of 1842, to compel the payment of the tax.   Under the first section authority is given to the assessor, in certain specified cases, to make application within a year to the Court of Common Pleas of the county, or to the Supreme Court, to enforce the payment of the tax.   It is not necessary

to state the circumstances under which the statute gives this authority to the assessor, inasmuch as their existence in this case is not disputed. The second section of the act declares that the neglect or refusal to pay such tax according to law shall be held and deemed to be a neglect or violation of duty or misconduct within the provisions of title 13 of chapter 8 of the third part of the Revised Statutes, and then proceeds as follows : " And the court, upon application of an assessor as herein provided and due proof, may proceed to enforce the payment or punish the misconduct in the same manner and with the like authority as is provided in the above-mentioned title of the Revised Stautes, in regard to offences therein made punishable, or to the enforcing the payment of money by fine and imprisonment, or either of them. The court is thus authorized to proceed in enforcing the payment of a tax, as courts may proceed in enforcing the payment of money under title 13 above referred to. Under that title (2 R. S., 534, 535 ; § 1, sub., 3 and § 4), where a rule or order of a court has been made for the payment of money and proof by affidavit is made of a personal demand of the money and a refusal to pay it, the court may issue a precept to commit the person disobeying to prison until such fine and the costs are paid. But in the absence of a personal demand, the court is to grant an order requiring the party to show cause why he should not be punished for the misconduct, or issue an attachment to arrest the party and bring him before the court to answer. (2 R. S., 536 ; § 5.) In the case before us the assessor gave notice of motion for an attachment or for such further or other relief as the court by order might think proper to grant, according to chapter 318 of the Laws of 1842. Upon the hearing of this motion, the affidavit of Wells, the defendant, was produced, controverting the fact of his residence in the town of New Haven, in the year 1864, and he appeared by counsel, who was heard on his behalf. The court thereupon made an order entitled "In the matter of the application of David Nichols, one of the assessors of the town of New Haven, Oswego county, to

compel Horace Wells to pay tax assessed on personal property in 1864 and 1865," as follows: "On reading and filing the affidavits in favor of and opposed to said applications and after hearing Mr. Churchill on behalf of said application, and Mr. Bush opposed, it is ordered that it be referred to Mr. Perry as sole referee, to take the evidence which may be produced before him, upon proper notice by either of the parties herein and that he report the said evidence to this court, and that this motion stand over to an adjourned Special Term, and that the same be then heard upon the affidavits and papers now filed and upon the evidence that may be then reported by the referee to the court." Under this order the parties proceeded and a large number of witnesses were examined on both sides on the question of residence. Upon the adjourned day the court after hearing the parties, made the order complained of, adjudging Wells guilty of misconduct, imposing a fine and directing Wells' imprisonment until payment. The notice of motion having been for other relief as well as for the attachment, and the motion having been heard without objection on the part of Wells and the application having been ordered to stand over until the report of the referee of such testimony as should be produced and then to be heard, came up on that hearing as upon an order to show cause why Wells should not be compelled to pay the tax. It was obviously litigated on that basis and the party even if he might, in the first instance, have successfully objected to the form by which he was called on to appear, ought not to be allowed to do so after appearing and submitting to the jurisdiction of the court by a full litigation upon every open question involved. The order to show cause has only the effect of a notice, and after a party appears and litigates on the merits, it is too late to go back to such a defect; for the object alike of either proceeding, is to get the party into court. I do not think there was any error in the court proceeding to determine upon the merits of the application.

A question is also raised as to the right of the court to add five per cent to the amount of the tax, besides the costs and expenses of the proceedings by the assessor, under the act of 1842. By the third section of the act the costs and expenses of the assessor are to be paid out of the fine; and the amount of the tax is also to be paid out of the fine to the county treasurer, who is to apply the same, as it was required to be applied, if it had been collected by the collector. If the law had remained unchanged, I think the objection would have been well taken. A change has, however, been effected by section 16 of chapter 455 of the Laws of 1847, which provides that whenever any town collector makes return to the county treasurer for any unpaid taxes, he shall add to the several sums so returned by him five per cent, which shall go to the credit of the county and be collected with said unpaid taxes. Since this statute, I think the additional sum of five per cent may be properly added to the fine over the assessed tax and the expenses, under the act of 1842, in accordance with the spirit of the provisions of the act of 1847 above cited. For these reasons I am of opinion that the order should be affirmed, with costs.

Lott, Ch. C. (dissenting). This is a proceeding instituted under chapter 318 of the Laws of 1842 by David L. Nichols, one of the assessors of the town of New Haven, in Oswego county, to enforce the payment of taxes imposed on the appellant, Horace Wells, in that town, for personal property in the years 1864 and 1865.

That act provides that in case of the refusal or neglect of any person to pay any tax imposed on him for personal property assessed at a sum exceeding $1,000, and there shall be no goods or chattels in his possession upon which the same may be levied by distress and sale according to law, the collector of the town to whom the warrant for its collection is issued, if he has reason to believe that such party has debts, credits, *choses* in action or other personal property not taxed elsewhere in this State, and upon which levy cannot be made

according to law, shall report the facts to the assessors of such town; and any assessor may thereupon, in his discretion, make application within one year to the Court of Common Pleas of the county, or to the Supreme Court, to enforce the payment of such tax. It is there declared that such refusal or neglect shall be held and deemed to be a neglect or violation of duty or misconduct within the provisions of title 13 of chapter 8 of the third part of the Revised Statutes, and the court, upon the application of an assessor, as so provided, and due proof, may proceed to enforce the payment or punish the misconduct in the same manner and with the like authority as is provided in the said above-mentioned title of the Revised Statutes, in regard to offences therein made punishable, or to the enforcing the payment of money by fine and imprisonment or either of them.

The order in question was based on an application purporting to have been made in pursuance of the law, and in the view which I have taken of the question elsewhere on this appeal, I shall assume that sufficient facts were stated in the application to call upon the court to determine whether the appellant was guilty of a neglect or violation of duty or misconduct within its provisions. It thus becomes necessary to inquire whether the court, upon that application, and the proceedings had thereon, could make an adjudication declaring him thus guilty, and for that purpose an examination of title of the Revised Statutes referred to is requisite. It is entitled: " Of proceedings as for contempts to enforce civil remedies and to protect the rights of parties in civil actions. " (2 R. S., p. 534.) It provides, by section 5, that in all cases other than that specified in the fourth section (having no reference to the present), " the court shall either grant an order on the accused party to show cause at some reasonable time, to be therein specified, why he should not be punished for the alleged misconduct; or shall issue an attachment to arrest such party, and to bring him before such court, to answer for such misconduct." It will thus be seen that there are two distinct and

different modes provided for enforcing the remedies provided by this title.

It now becomes proper to ascertain which was pursued in the case under review.

The application was based on affidavits tending to show the appellant's refusal or neglect to pay the tax imposed on him, and to bring his case within the said law of 1842; and upon a notice to him on behalf of the assessor that a motion would be made to the court at a specified time and place "for an order that an attachment as for a contempt" be issued against him for having neglected to pay the taxes in question, particularly specified in the said affidavits "and for such further or other relief" as the court might by order "think proper to grant according to chapter 318 of the Laws of the State of New York, passed in 1842."

The appellant appeared by counsel and read affidavits in opposition to the said motion, and the court on reading and filing the affidavits in favor of and against the same application, and after hearing counsel for both parties, ordered a reference to a referee to take the evidence which might be before him upon proper notice by either of the said parties, with a direction to report the evidence, and the motion was ordered to stand over till a future day; and then to be heard upon the affidavits and papers filed, and upon the evidence that might be so reported by the referee.

Evidence was taken under that order by both parties and upon the report thereof to the court, it made an order founded thereon and upon the affidavits previously produced and read, and hearing counsel thereon without any examination of the said Horace Wells, by which he was "adjudged to be guilty of a violation of his duty and misconduct, within the provisions of the statute in such case made and provided," and a fine for such misconduct was thereupon imposed on him, with a direction to take him and commit him to jail, and there detain him until the payment of the said fine. This order was erroneous.

The only question presented on this motion was, whether

there was sufficient shown to justify or authorize the issuing of an attachment against Wells; and if there was, then one was to be issued, under which he was to be arrested and on his being brought into court, or on appearing therein in pursuance of a bond given for such appearance, the statute contains the following provision, viz.: "The court shall cause interrogatories to be filed, specifying the facts and circumstances alleged against the defendant and requiring his answer thereto; to which the defendant shall make written answers on oath, within such reasonable time as the court shall allow; the court may receive any affidavits or other proofs contradictory of the answers of the defendant on his information thereof and upon the original affidavits; such answers and such subsequent proof shall determine whether the defendant has been guilty of the misconduct alleged." (See §§ 19 and 20.) It will thus be seen that the attachment is only an initiatory proceeding and that no final adjudication can be made until there has been an examination of the party proceeded against. The remedy is given by statute and its terms must be complied with. The right is thereby secured to a party sought to be punished, to have his attention directed by interrogatories "specifying the facts and circumstances alleged" as the misconduct complained of. This specification is important. It directs the attention of the party to the specific ground of complaint, and gives him a better and fuller opportunity to answer it more satisfactorily than to meet the general allegations or statements contained in affidavits of the complainant. Chancellor WALWORTH has given such a construction to the statute.

It was held by him in *McCredie* v. *Senior* (4 Paige, 378).

The following statement covering other facts in the case is made, viz.: "The complainant applied to the vice-chancellor for an attachment against the defendants in the suit in this court for a contempt. Upon hearing the parties the vice-chancellor made an order declaring that the defendants had been and were guilty of a contempt of this court in having disobeyed and violated the order made on the eighth of Sep-

tember for an injunction." On an appeal therefrom to the
chancellor, he said : "As the parties were at issue by their
affidavits as to the main facts upon which the question as to
the violation of the injunction depended, it was a proper case
for the issuing of process to bring the defendants before the
court." And then, after referring to the object to be attained
thereby, and that there was not sufficient evidence before the
vice-chancellor on which to found an adjudication or final deci-
sion that the defendants had been and were guilty of a con-
tempt, he adds : "Besides, it is not the practice of the court,
upon an application for an attachment, to make a final adjudi-
cation as to the guilt of the accused. The order in such a
case should direct the issuing of an attachment, without any
other adjudication, or should merely declare that it appears
to the court that there is probable cause for issuing an attach-
ment that the defendant may be brought before the court to
answer as to the alleged contempt. The statute has pointed
out the mode of proceeding to ascertain the guilt or inno-
cence of the accused upon the return of the attachment."
He then refers to the mode of proceeding by an order to show
cause, as also provided by the said section (5) already men-
tioned ; and after speaking of an order directing an attachment
to be merely initiatory, he concludes by saying that the part
of the order containing an adjudication that the defendants had
been guilty of a contempt was erroneous, and directed it to
be struck out and to have a declaration substituted that it
appeared to the court that there was probable cause for issuing
an attachment to bring the defendant into court to answer
and be examined on interrogatories relative to the alleged con-
tempt. This decision was made in 1834. The same practice
was subsequently recognized by the chancellor, in 1842, in
the case of the *Albany City Bank* v. *Schermerhorn* (9 Paige,
372); and he therein, after stating that the court, where
the prosecutor proceeds by attachment, is required by statute
on the party being brought into court, or voluntarily appear-
ing therein to cause interrogatories to be filed, says : "This
appears to be absolutely necessary in a proceeding by attach-

ment, unless the defendant admits the alleged contempt."
The same distinction, as to the different modes of proceedings,
was recognized by the Court of Appeals in *Pitt* v. *Davison*
(37 N. Y., 235). And although an order at Special Term
adjudging a party to be in contempt and directing his pun-
ishment, without filing interrogatories, was sustained, the case
shows that it was made under proceedings by an order to
show cause, and the objection of the principal taken to the
adjudication was that it was made on the service of the order
on the defendant's attorney, and not on the defendant per-
sonally. The proceeding was treated as one in the action,
and the service for that reason was held sufficient.

I deem it unnecessary to add anything further than to refer
again to the fact that the proceeding in the present matter
was not by an order to show cause why he should be pun-
ished for the alleged misconduct charged against him, but by
a notice of an application " for an order that an attachment
as for a contempt" be issued against him for his neglect.
There is no indication that there would be an application on
that hearing for an order directing a punishment for the mis-
conduct, without first having the right to an attachment
passed on, nor if it was granted, that a final adjudication
would, nevertheless, be made on the question of misconduct,
without, in fact, issuing it. It is true that the notice also
concludes with the general declaration that such further or
other relief would be asked as the court might think proper
to grant under the act in question. But under that such
relief only could be properly granted as is consistent with
the special application and as would seem to be determined
to be called for after the answers made to such interrogatories
as are required to be filed on the return of the attachment, if
one was issued.

I am, therefore, brought to the conclusion that the order,
both of the General Term and Special Term, should be
reversed, and that one should be made declaring that there
was probable ground for the issuing of an attachment and
directing one to be issued. The costs on the motion at Special

Term and the appeal to the General Term and to this court, must abide the event of the application.

For affirmance, JOHNSON, EARL and REYNOLDS, CC.

For reversal, LOTT, Ch. C., and GRAY, C.

Judgment affirmed.