(63 Misc. Rep. 445.)

CITY OF NEW YORK v. BRINCKERHOFF et al.

(Supreme Court, Trial Term, New York County.    May, 1909.)

TAXATION (§ 254*)—PERSONAL PROPERTY—CHANGE OF DOMICILE.

An insane person residing in the city of New York and an inmate of an asylum in that city did not acquire a new domicile by the removal of the asylum to another county and his subsequent removal to that county and his detention there; but his personalty is still taxable in the city of New York.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 419–426; Dec. Dig. § 254.*]

Action by the City of New York against Edwin O. Brinckerhoff and Thomas S. Ollive. Judgment for plaintiff.

F. K. Pendleton, Corp. Counsel, for plaintiff.

Ezekiel Fixman, for defendants.

GREENBAUM, J. The contention made in behalf of the defendants, that the removal of the incompetent, Brinckerhoff, about 10 years ago, by the authorities of Bloomingdale Asylum, from New York City, where that institution theretofore had been located, to its present location in Westchester county, effected a change of his domicile, is untenable. The incompetent was removed, together with all the other inmates of the asylum, when the institution removed from New York City to Westchester county. The defendant Ollive, the committee of the lunatic, did not request his removal. He merely acquiesced in the action of the asylum authorities. Brinckerhoff became insane after he attained his majority, and it is conceded that his domicile before and up to the time he was adjudged insane was in New York City. In the absence of controlling circumstances to the contrary, his domicile before insanity will be deemed to have continued during mental incompetency. 10 Am. & Eng. Encyc. of Law (2d Ed.) 35.

Defendants' counsel argues that the committee had the right to change the domicile or residence of the lunatic committed to his care, and hence his consent to the removal of Brinckerhoff constituted a change of domicile of his ward. In Matter of Lynch, 5 Paige, 120, it was held that the committee alone may decide, "subject, however, to the superintending control of the court, as to the proper place" in which the incompetent person shall reside. Attention is directed to various cases in which the authority of the committee to control the residence of his ward is recognized. Hill v. Horton, 4 Dem. Sur. 88, and cases therein cited. It seems to me, however, that the authorities relied upon have no application to the facts before us. This is not a case where the incompetent person, with the sanction of the court, has been transferred to another county in the personal custody of the committee, or with a private family. It appears that the lunatic has been hopelessly insane for a long period of time, and that he has been confined at Bloomingdale Asylum for upwards of 15 years. It must be assumed that the incompetent is detained at the asylum by virtue of an order of commitment made in this county, where it is shown he

resided at the time of his commitment. Code Civ. Proc. § 2323a; Insanity Law, §§ 60, 61 (Laws 1896, p. 491, c. 545).

When the present committee was appointed, the defendant Brinckerhoff had already been committed to the asylum, and it is not contended that the insane person has ever been put under the personal control of his relatives or of his committee, as the court would have had power to do. Insanity Law, § 62 (Laws 1896, p. 492, c. 545, as amended by Laws 1903, p. 329, c. 146, § 1). The detention of the incompetent at Bloomingdale Asylum cannot be regarded as his voluntary act, and the circumstance that the authorities of the asylum removed the inmates of that institution from the city of New York to more spacious quarters in Westchester county may not be taken as evidence of an intent on the part of either the lunatic or his committee to change his domicile. "As a general rule, a person does not gain a residence except by some change in the place of his abode, accompanied by an intent to acquire such new residence." Jacobs on Domicile, §§ 125, 126, 127. "When a person shall have acquired a residence in a tax district and shall have been taxed therein, such residence shall be presumed to continue for the purpose of taxation until he shall have acquired another residence in this state or shall have removed from this state." Tax Law, § 8 (Laws 1896, p. 800, c. 908); Matter of Nichols, 54 N. Y. 62.

It is in evidence that the defendant Brinckerhoff paid the taxes through his committee in New York county for the year 1902 and for some years previous thereto, and, consequently, since the removal of Bloomingdale Asylum to Westchester county. There is thus a complete absence of any intent to change the domicile of the incompetent to Westchester county.

The defendant Brinckerhoff was lawfully assessed in the county of New York, and judgment must be directed in favor of the plaintiff for the sum of $3,697.25 for the unpaid personal taxes for the year 1906, for which he was duly assessed, together with interest thereon at the rate of 7 per cent. per annum from October 1, 1906. No personal judgment is to be entered against the committee. The defendant Thomas S. Ollive is authorized, however, to pay the amount of said judgment out of the estate of the incompetent.

Judgment accordingly.