THE PEOPLE OF THE STATE OF NEW YORK on the relation of
AGNES A. GASTON, Respondent, *v.* ANTHONY F. CAMPBELL
Appellant.

A regiment of the State militia, when mustered into the service of the
United States, does not cease to be a part of the militia of the State,
although employed by the general government, and subject to the regu-
lations and discipline of the regular army.

And a commissioned officer of such regiment, mustered into the service of
the United States, is entitled to exemption from arrest upon civil process,
under the provisions of chapter 129 of the Laws of 1858, which enacts,
that no person belonging to the military forces, shall be arrested in any
civil process, while going to, remaining at, or returning from any place,
at which he may be required to attend, for elections of officers, or other
military duty.

The provisions of the act of congress limiting the privilege of exemption
from arrest, of persons in the military force of the United States, to
non-commissioned officers and privates, do not affect the right of a
commissioned officer of the State militia to such exemption, although
mustered into the service of the United States.

That a person is exempted by statute from arrest upon civil process, is a
valid excuse to the sheriff, for his refusal to make the arrest, although he
is not bound to take notice of the privilege of exemption.

Accordingly, *Held* (GROVER, LOTT, and JAMES, JJ., *dissenting*), that where
the sheriff received an order to arrest and imprison one G., a commis-
sioned officer of a militia regiment of this State, for contempt in neglect-
ing to pay certain alimony, ordered to be paid by him, in an action for
divorce, brought by his wife; the fact that the regiment to which G.
belonged, then mustered into the service of the United States, under the
call of the president, was rendezvoused within this State, awaiting orders
to proceed to the seat of war, exempted G. from arrest upon such order,
and excused the sheriff from executing it.

(This cause was argued on the 12th day of January, 1869, and decided on
the 20th day of March, 1869.)

THIS was an appeal from the order of the General Term of
the Supreme Court, of the second judicial district, affirming
an order of the City Court of Brooklyn, punishing the sheriff
of Kings county, by fine, for contempt, in refusing to obey an
order, issued from that court, commanding him to arrest and
imprison one Gaston, for contempt, in neglecting to pay cer-

tain sums for alimony, ordered to be paid in an action brought by the relator, his wife, for divorce.

The sheriff was commanded, by the precept, to take the body of Gaston, and commit him to the Kings county jail, and keep him therein, in custody, until he should pay the sum of $5 and $30 and $10 costs.

The sheriff, on the 30th April, 1861, returned this precept "unexecuted, for the reason that the defendant within named, Albert G. Gaston, is exempt from arrest, he having been mustered into actual military service of the United States." Upon subsequent proceedings, to punish the sheriff, for misconduct in not executing the process, it appeared that Gaston, "at the time of the issuing of it, was a commissioned officer, viz.: paymaster in the 14th regiment New York militia, and that that regiment was then awaiting orders to proceed to Washington, or wherever else said regiment might be ordered by the government of the United States."

The court imposed a fine upon the sheriff of $45, and, in default of payment, that he stand committed.

*John H. Bergen,* for appellant.

*Samuel Hand,* for respondent.

MASON, J. If Albert G. Gaston was exempt from arrest, at the time the precept was placed in the sheriff's hands, then these proceedings must be reversed. The case of *Ray and others* v. *Hogeboom* (11 J. R., 433), decides that, where a soldier, privileged from arrest, was taken in execution by a constable, who suffered him to go at large, though the constable was not bound to take notice of the privilege of the party, yet it was a good defense, in an action for an escape, as the plaintiff, having no right to arrest, had suffered no injury.

The important question, in the case before us, is, whether Gaston was privileged from arrest. He was, at the time, a commissioned officer, a paymaster, in the 14th regiment, New York State militia. This regiment was then awaiting

orders to proceed to Washington, or wherever else the said regiment might be ordered by the government of the United States, and was, not long after, ordered to Washington, D. C., and I think it is fair to assume, from the case, that at the time the sheriff had this process in his hands, and Gaston went to the sheriff's office, with the deputy sheriff, and was permitted, by the sheriff, to go at large, he must be regarded as called into the service of the United States. This regiment had, undoubtedly, at that time, been called for in the service of the United States. The case of *Houston* v. *Moore* (5 Wheat. R., 1), decides that the order issued, calling the regiment into such service, does not change their character, and that the service does not commence, until the arrival of the militia at the place of rendezvous. (See pages 17, 18, 19, and 20.) I infer that this regiment had actually met at their place of rendezvous, in Brooklyn, at the time, and were awaiting orders to go forward to the seat of war, and so it is claimed by both parties. The sheriff's return states that Gaston was exempt from arrest, he having been mustered into the actual military service of the United States, and the relator's counsel claim that he was in the military service of the United States, and for that reason cannot claim the exemption of our State statute, in regard to the militia. This statute declares that, " *No person belonging to the military forces shall be arrested on any civil process, while going to, remaining at, or returning from any place at which he may be required to attend, for elections of officers, or other military duty.*" (Laws of 1858, chap. 129, § 17, p. 241.)

There can be no doubt, but Gaston was attending at the place of rendezvous of his regiment, at which he was required to attend, to perform a military duty. This statute exempts all persons, in the military service, from arrest on any civil process while attending at any place, at which they are required to attend to perform military duty. It is unlimited in its language, only so he is attending to perform military service, or duty.

It does not say military duty to the State. The statute

has reference, to be sure, to the State militia. The State militia, however, owe a duty both to the State, and to the national government.

The 14th subdivision of the 8th section of the 1st article of the Constitution of the United States says: " Congress shall have power to provide for calling forth the militia to execute the laws of the Union, suppress insurrection, and repel invasion." The 15th subdivision of the same section gives the power to provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be *employed in the service of the United States,* reserving to the States, respectively, the appointment of the officers, and the authority of training the militia, according to the directions prescribed by congress. Congress, by the act of February 28th, 1795, gave full power to the president to call forth the militia of the States, for the purposes above stated, to. serve for three months (1 United States Statutes at Large, 424), and, by the act of July 17th, 1862, the time was extended to nine months. In this act, the call must specify the time of service, but not exceeding nine months. (United States Statutes at Large, 1861, 1862, page 597.) The president is made the sole judge whether the exigency has arisen (*Martin* v. *Mott,* 12 Wheat. R., 30, 31); and this call may be made by the president upon the State executive, or by orders, to any subordinate officers of militia. (5 Wheat. R., 17, 18, 53, 54, 55, 56, 61, 62; 3 Story's Com. on Const., § 1207.) These acts speak of calling forth the militia of the States, to be employed in the service of the United States, and they do not cease to be militia of the State, because they are employed in the service of the United States. The State still retains the power, while in the service of the United States, to appoint the officers and fill all vacancies.

They are still the militia of the State. It is true, that while employed in the service of the United States, they are subject to the rules and discipline prescribed for the government of the regular army of the United States. (Act of 1820, chapter 97; act of 1821, chapter 68.) The 21st section of the

act of congress of January 11th, 1812 (2 U. S. Statutes at large, 674), has no application to the State militia. It is limited in terms to enlisted men into the regular army. The act of April 7th, 1858, exempting the militia from arrest on civil process, is a law of the State, applied to the militia of the State, and exempts them from arrest when rendezvoused for any military duty. As they owe a military duty to the gene ral government, when called on, as well as to the State, I am not able to perceive why this statute does not exempt them from arrest, as much in the one case as in the other. The reason of the statute is applicable alike to both. They are a citizen soldiery of both governments, and owe as much duty, when the emergency arises, to serve the one government as the other.

They are performing military duty, as militia of the State, in either case. In the one case, they are, to be sure, rendering service to the general government, and in the other, to the State. The fact that when employed in the service of the government of the United States, they are necessarily placed under the army regulations of the United States, does not alter the case; they are still a distinct military force, belonging to the State. If I am right in the views above expressed, then Gaston was exempt from arrest on civil process, and the sheriff is excused, if this process is to be regarded as civil process; and it has never been questioned but such a process as this, to enforce a civil remedy by the collection of a speci fied sum of money, as alimony and costs, was a civil process. It is not necessary to examine the other objection raised to the proceedings, by the appellant. I will say, however, that as these proceedings against the sheriff were had on a previous order to show cause, granted upon affidavits, which were served with the order, no interrogatories were required to be filed, and the proceedings were strictly regular. The case of *Brush* v. *Lee* (MS.), decided at the June term, 1867; also *Pitt* v. *Davison* (37 N. Y. R., 243), is directly in point. The order of the General Term of the Supreme Court, and the City Court of Brooklyn, and all the proceedings, must be

reversed with costs, for the reason that Gaston was privileged from arrest.

MURRAY, J. The order for the arrest of Gaston was authorized by the statute. (2 R. S., 535, § 4.)

In the proceeding against the sheriff, the order to show cause was proper, and authorized by statute. (2 R. S, 535, § 5; *Albany City Bank* v. *Schermerhorn*, 9 Paige, 372; *M'Credie* v. *Senior*, 4 Paige, 378; *In the matter of Henry D. Smethurst*, 4 How. Pr. R., 369.)

When the party charged with misconduct, on the return of the order to show cause, appears, and does not deny the alleged misconduct, or show any cause why he should not be punished therefor, the court may at once proceed to punish. (Id.)

In that case, no interrogatories need be filed. It is only when an attachment has been issued, that interrogatories need be filed.

In this case the sheriff did not deny having the order for the arrest of Gaston. He did not deny his refusal to arrest him, but gave his reason why. It is claimed, on the part of the relator, that he had no good reason, and, therefore, she asks the court to punish him for contempt, adding to the papers the affidavit of the deputy sheriff, and that of the relator's attorney, and, on these, the court convicts the sheriff of contempt.

If Gaston, under the circumstances, was liable to arrest, the conviction was right. It appears from the affidavit used before the court, when the conviction was had, that Gaston, at the time the sheriff received the order, was a commissioned officer in the 14th regiment of the New York militia, then at Brooklyn, awaiting orders from the general government to proceed to Washington, in the military service of the United States, as a militia regiment. That the regiment had since gone, and was, at the time of making the affidavit (May 21st, 1861), in the United States military service, and Gaston with it. The return of the sheriff, dated April 30th, 1861, states that

Gaston was exempt from arrest, he having been actually mustered into the service of the United States.

Reading them together, they prove that Gaston was a member of a militia regiment, mustered into the United States service, then at Brooklyn, awaiting orders to move.

Mustering a militia regiment into the United States service, does not change its character.    It only assumes new responsibilities and duties.    At the end of the time it was ordered out, it returns and occupies precisely the position it did when it started.    Gaston must be regarded as belonging to the military force of the State, and entitled to the protection given by its laws, at the time the sheriff was directed to arrest him.

Section seventeen, of chapter 129, of the Laws of 1858, provides that "no person belonging to the military forces shall be arrested on any civil process while going to, remaining at, or returning from any place at which he may be required to attend for elections of officers or other military duty."

The order, by which the sheriff was directed to arrest Gaston, was a civil process.    (*People* v. *G. W. Cowles*, 34 Howard Pr. R., 481; *People* v. *Bennet*, 4 Paige, 282; *Van Wezel* v. *Van Wezel*, 3 Paige, 38.)

Gaston was with his regiment, waiting orders to move; he was, for that purpose, required to remain there, and was on that day on military duty, and was by that statute exempt from arrest on this process.

The judgment of the General Term, and the order of the City Court of Brooklyn, should be reversed with costs.

HUNT, Ch. J., WOODRUFF and DANIELS, JJ., concurred for reversal.

GROVER, J., for affirmance.    He thought that, by the true construction of the State statute of exemption, it was limited to persons engaged in military service under the State, and was not applicable to the militia, when employed in the service of the United States.

LOTT and JAMES, JJ., were also for affirmance.

Order reversed with costs.