Lamaster *v.* Keeler.

---

## LAMASTER *v.* KEELER.

### *U. S. Supreme Court; December,* 1887.

1. *Remedies upon judgments in Federal courts.*] In pursuing the reme-
dies for the enforcement of a judgment in a common-law cause, re-
covered in a Federal court, the "forms and modes of proceeding"
provided for the enforcement of a like judgment in a State court are
not to be followed, unless they were either prescribed by a law of
the State, at the time U. S. R. S, § 916, was passed (June 1, 1872),
or re-enacted (December 1, 1873), or have since been adopted by a
general rule of the Federal court.

2. *The same; case stated.*] Hence, where the State statute, giving to a
bond to stay execution the force and effect of a judgment confessed
from the date thereof, and authorizing issue of execution, at the
expiration of the stay, against the sureties, was passed after the re-
enactment of section 916,—*Held*, that a sale of lands on execution
issued upon a judgment extended against the sureties under the State
statute, prior to the adoption thereof by any rule of court, was void,
and conferred no title on the purchaser.

3. *Effect of confirmation of sale on execution.*] A confirmation by order
of court of a sale on execution may cure mere irregularities not affect-

ing its fairness, but not an infirmity growing out of the nullity of the judgment under which it was had.

Writ of error to the circuit court of the United States for the district of Nebraska.

This is an action of ejectment to recover a parcel of land in the city of Lincoln, State of Nebraska. The plaintiff below, the defendant in error here, traces title to the premises from a purchaser at a sale under an execution issued upon a judgment, extended by the clerk of the court so as to include certain sureties, and among them the defendant below. The contention of the defendant is, that the extension of the judgment so as to include him was unauthorized and void, and that the execution and sale thereunder of his property was, therefore, without any force or validity.

The facts of the case, so far as it is necessary to state them for the disposition of the contention of the defendant below, are briefly these: On November 12, 1875, Charles W. Seymour and William Wardell, as plaintiffs, recovered a judgment in the circuit court of the United States for the district of Nebraska, against one William P. Young, as defendant, for $6,500 and costs. The defendant in that case, Young, being desirous of staying execution upon this judgment, obtained a bond, as the undertaking is termed, signed by five parties, of whom Lamaster, the plaintiff in error, was one, in which, after reciting the judgment recovered, they acknowledged themselves "security for the defendant for the payment of the judgment, interest and costs, from the time of rendering said judgment, until paid, to be paid nine months from the rendering the same." Attached to this instrument was an affidavit of justification of all the parties signing it except Lamaster. Originally, his name was signed to the affidavit, but he had it cut off before the instrument was presented to the clerk. It is unnecessary to state the cir-

cumstances under which this was done or the effect of it (if any it had) upon his liability, as the case will be determined on other points.

The bond, so called, was approved by the clerk of the court, on December 2, 1875, and filed; and thereupon he made in one of the books of record of the court, called "Judgment Index of the Court," the following entry: "Defendants, Lamaster, M. F., *et al.*, surety; Plaintiffs, Seymour and Wardell, appearance. Docket 6, No. 138; date of judgment, Nov. 12th, 1875; amount of judgment, $6,500."

This entry was made by the clerk under the impression that the statute of Nebraska of February 23, 1875, entitled "An act to provide for stay of executions and orders of sale," was the law governing the stay of executions upon judgments in the circuit court of the United States. The third section of the statute provides for a stay of execution for a period of nine months, upon judgments for the recovery of money only (with certain exceptions not material in this case), on condition that the defendant shall, "within twenty days from the rendition of judgment, procure two or more sufficient freehold sureties to enter into a bond, acknowledging themselves security for the defendant for the payment of the judgment, interest, and costs from the time of rendering judgment until paid."

The other sections which bear upon the questions involved are the following:

Sec. 4. "Officers approving stay bonds shall require the affidavits of the signers of such bonds, that they own real estate not exempt from execution and aside from incumbrances, to the value of twice the amount of the judgment." . . . .

Sec. 6. "The sureties for the stay of execution may be taken and approved by the clerk, and the bond shall be recorded in a book kept for that purpose, and have the force and effect of a judgment confessed from the date thereof against the property of the sureties, and the clerk shall

enter and index the same in the proper judgment docket as in the case of other judgments. "

Sec. 9. " At the expiration of the stay, the clerk shall issue a joint execution against the property of all the judgment debtors and sureties, describing them as debtors or sureties therein. " (See Laws of Nebraska of 1875, p. 49.)

Upon the assumed sufficiency of the bond of the sureties, and of the above entry in the Judgment Index under the statute of Nebraska, the clerk, on April 14, 1881, issued an *alias* execution to the marshal of the district, commanding him as follows :

" That of the goods and chattels, and for want thereof, then of the lands and tenements of William P. Young, debtor, and John I. Irwin, Jane Y. Irwin, W. T. Donavan, Milton F. Lamaster, and Nathan F. Moffit, sureties, in your district, you cause to be made the sum of four thousand seven hundred forty-four and $\frac{31}{100}$ dollars, being the balance due April 2d, A. D. 1881, on the judgment of the circuit court of the United States for the district of Nebraska, at the November term thereof, in the year 1875, by which Charles W. Seymour, and William W. Wardell, recovered against the said William P. Young, with interest thereon from the second day of April, A. D. 1881, until paid, together with the further sum of ——, costs of increase on said judgment, and also the costs that may accrue on this writ. And have you the said moneys before the clerk of the said circuit court, at the city of Omaha, in said district, within sixty days, to be paid to the persons entitled to receive the same. "

Under this execution, the premises in controversy, being a lot in the city of Lincoln, were, on May 17, 1881, sold to one Thomas Ewing for the sum of $5,600. A motion to set aside the sale having been denied, and the sale confirmed, the marshal's deed of the premises was made to the purchaser, and he conveyed them to the plaintiff.

The petition,—the designation given to the first plead-

ing, in the system of procedure in civil cases in force in Nebraska,—sets forth the title of the plaintiff under the execution and sale mentioned, the detention of the premises by the defendant, and the receipt by him of the rents and profits to the amount of $3,000, and prays judgment for the possession of the premises and for the rents and profits. The defendant pleaded that the conveyance from Ewing, the purchaser at the execution sale, to the plaintiff, was colorable and collusive, for the purpose of enabling the latter to commence and maintain an action for the recovery of the property in the circuit court of the United States. And in answer the petition the defendant denied the validity of the bond, the extension of the judgment against him, and the proceedings thereunder, and also set up the pendency in the State court of a suit for the determination of his title to the premises.

Two trials of the case were had, which is permissible in actions of ejectment under the laws of Nebraska. On the first, the verdict of the jury was for the defendant, on the second, they found that the conveyance by the purchaser at the marshal's sale to Ewing, the plaintiff herein, was "merely colorable and collusive, and was made for the purpose of creating a case cognizable in the Federal court, and the plaintiff was not the real party in interest, but that the action was being prosecuted for the use and benefit of Ewing, and that Keeler is only a nominal and colorable party."

This verdict being set aside by the court, a third trial was had, which resulted in a general verdict for the plaintiff, under the instructions of the court. The question raised on the trial and decided by the court, upon the instruction refused and those given, related to the validity of the proceedings taken by the clerk upon the bond of the sureties, to authorize execution against their property, and the sale of the premises.

The defendant requested the court to instruct the jury that the statute of Nebraska respecting the stay of exe-

cutions and orders of sale, approved February 23, 1875, " was not operative to authorize the execution against Lamaster's property;" but the court refused the instruction and charged the jury as follows: "That the filing of defendant's bond with the clerk of the court, and its approval by him, and his approval of the sureties thereto, including the defendant, the record of the same, the entry of memoranda thereof in the judgment index, called in the statute 'extending the judgment,' justified the issue by the clerk of the court of an execution upon the judgment of Seymour and Wardell against Young and others, directed to the marshal, commanding him to make the balance due upon the judgment out of the property of the principal and sureties, including that of the defendant Lamaster, and the sale by the marshal of the defendant's property under and by virtue of the execution, was authorized by law." And again, " that when the bond was taken by the clerk, as shown in evidence, and when the proceedings were taken thereon leading to the sale by the marshal of the property in question, the statute of this State, passed on the 23d of February, 1875, and entitled 'An act to provide for stay of executions and orders of sale,' was in force in the court, and was a law therein, the same as in the district courts of the State."

And the court further instructed the jury to find a general verdict for the plaintiff.

To the refusal of the court to give the instruction requested, and to the instructions given, the defendant at the time excepted.

The jury found a verdict for the plaintiff; and to review the judgment entered thereon the defendant has brought the case here on a writ of error.

On December 30, 1876, and not before, the circuit court of the United States for the district of Nebraska made the following order:

" Ordered, that the laws of the State of Nebraska, now in force, regulating the issuing of executions and of the

proceedings to be had thereon and thereunder, be, and the same are hereby, adopted as the rule of procedure to enforce the collection of judgments in the United States circuit and district court for said State."

*John F. Dillon* and *George W. Doane*, for the plaintiff in error.

*J. M. Woodworth*, for the defendant in error.

FIELD, J.—[After stating the facts as above.]—The contention of the plaintiff below, the defendant in error here, that the act of Nebraska of Feburary 23, 1875, governed proceedings for the stay of money judgments in the Federal courts of the Nebraska district equally as for the stay of such judgments in the courts of that State, and in like manner determined the liability of sureties upon bonds given for such stay, is founded upon the language of section 914 of the Revised Statutes, which is as follows :

" The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

This section is a re-enactment of section 5 of the act of June 1, 1872, "to further the administration of justice" (17 *U. S. Stats.* ch. 255), and was intended to assimilate the pleadings and the procedure in common-law cases in the Federal courts to the pleadings and procedure used in such cases in the courts of record of the State within which the Federal courts are held. Much inconvenience had been previously felt by the profession from the dissimilarity in pleadings, forms, and modes of procedure of the Federal courts from those in the courts of the State, consequent upon the general adherence of the former to the

common-law forms of actions, pleadings and modes of pro-
cedure; while the distinctions in such forms of action
and the system of pleading and the modes of procedure
peculiar to them had been in many States abrogated by
statute. The new codes of procedure did not require an
accurate knowledge of the intricacies of common-law
pleading; and to obviate the embarrassment following the
use of different systems in the two courts, the section
mentioned of the act of 1872 was adopted. As said by
this court in the case of Nudd v. Burrows (91 *U. S.* 426,
441), its purpose " was to bring about uniformity in the
law of procedure in the Federal and State courts of the
same locality. It had its origin in the code enactments of
many of the States. While in the Federal tribunals the
common-law pleadings, forms, and practice were adhered
to, in the State courts of the same district the simpler
forms of the local code prevailed. This involved the
necessity, on the part of the bar, of studying two distinct
systems of remedial law, and of practicing according to
the wholly dissimilar requirements of both. The incon-
venience of such a state of things is obvious. The evil
was a serious one. It was the aim of the provision in
question to remove it. This was done by bringing about
the conformity in the courts of the United States which it
prescribes."

The general language of the section, in the absence of
qualifying provisions, would comprehend all proceedings
in a cause from its commencement to its conclusion,
embracing the enforcement of the judgment therein. The
court which has jurisdiction of a cause has jurisdiction
over the various proceedings which may be taken therein,
from its initiation to the satisfaction of the judgment ren-
dered. Any practice, pleading, form, or mode of proceed-
ing which may be applicable in any stage of a cause in a
State court would, therefore, under the section in question,
in the absence of other clauses, be also applicable in a like
stage of a similar cause in a Federal court. The section

would embrace proceedings after judgment equally with those preceding its rendition.

The first process act of Congress, passed September 29, 1789 (1 *Stat.* 93), provided "that until further provision shall be made . . . the forms of writs and executions, except their style, and *modes of process*, . . . in the circuit and district courts, in suits at common law, shall be the same in each State respectively as are now used or allowed in the supreme courts of the same."

The second process act, passed May 8, 1792 (1 *Stat.* 275), provided "that the forms of writs, executions, and other process, except their style, and the *forms and modes of proceeding* in suits in those of common law, shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of the United States,'"—the first process act mentioned above.

In Wayman *v.* Southard (10 *Wheat.* 1), these statutes were considered and construed by this court. And in giving a meaning to the language "forms and modes of proceeding in suits," the court, speaking by Chief Justice Marshall, said, that it "embraces the whole progress of the suit, and every transaction in it, from its commencement to its termination, which has been already shown not to take place until the judgment shall be satisfied. It may then and ought to be understood as prescribing the conduct of the officer in the execution of process, that being a part of the proceedings in the suit" (10 *Wheat.* 9).

There would, therefore, be good reason for the contention of the plaintiff below, that the general words of section 914 of the Revised Statutes, "forms and modes of proceeding," apply to proceedings for the enforcement of judgments, as well as to proceedings before the judgments were rendered, but for the provisions of section 916, which is section 6 of the same act of June 1, 1872, from which section 914 was taken. Section 916 is as follows:

"The party recovering a judgment in any common-law

cause, in any circuit or district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court; and such courts may, from time to time, by general rules, adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

This section shows that in pursuing the remedies for the enforcement of a judgment in a common-law cause, recovered in a Federal court, the "forms and modes of proceeding" provided for the enforcement of a like judgment in a State court are not to be followed, unless they were prescribed by a law of the State, at the time the provisions of the section took effect ; or, if subsequently prescribed by such law, until they have been adopted by a general rule of the court. In providing for remedies upon judgments, the section not only excludes the application of the provisions of section 914 to such remedies, but also indicates the extent to which remedies upon judgments furnished by State laws may be used in the Federal courts. Congress, which alone can determine the remedies which may be pursued for the enforcement of judgments in the Federal courts, as well as the procedure to be adopted in the progress of a suit, has declared its will with respect to both. The procedure in civil causes, other than those in equity and admiralty, from their commencement to final judgment, must conform, as near as be, to the procedure *existing at the time* in like causes in the courts of record of the State in which the Federal courts are held. It must, therefore, follow subsequent changes in the procedure in like causes in the State courts. But to enforce judgments in common-law causes, only such remedies can be pursued " as *are now provided* in like causes by the laws of the State,"—that is, when the act of Con-

gress on the subject, the above section, was passed or re-enacted,—or, if provided by subsequent laws of the State, such as have been adopted by the Federal courts.

It matters not that the remedies designated in section 916 are stated to be, to reach by execution or otherwise the property of the judgment debtor ; and that proceedings under the stay-law of Nebraska are only to secure, where a stay is obtained, the personal liability of the sureties for the amount of the judgment—in the absence of a designation of any other remedies, the section is a declaration that, until adopted by a rule of the court, no other remedies prescribed by State laws shall be permitted in the Federal courts. The extent to which the authority of the Federal courts may go, in the enforcement of judgments, by resort to remedies provided by State laws in similar cases, is thus defined and limited.

Section 916, as mentioned, is taken from the act of Congress of June 1, 1872, and is re-enacted in the Revised Statutes, which took effect as of December 1, 1873. The act of Nebraska of February 23, 1875, had not been adopted by any rule of the Federal court when the judgment of Seymour *v.* Young was rendered in the circuit court of the United States, November 12, 1875, or when that judgment was extended by the clerk of that court, December 2, 1875, so as to embrace the sureties on the bond given to stay execution. That act was not adopted as a rule of procedure of that court until December 30, 1876.

It follows from this construction of the two sections 914 and 916, that the act of Nebraska did not govern proceedings for the stay of execution upon that judgment, or determine the liability of the sureties on the bond or undertaking given for such stay ; and that the act of the clerk extending that judgment against the sureties was without authority and void. The sale, under the execution, of the property of Lancaster, one of the sureties, and

the deed of the marshal to the purchaser at such sale, therefore, conferred no title.

The confirmation of the sale by the order of the court did not cure the invalidity of the execution upon which it was made. The extension of the judgment against Young, so as to embrace the sureties, being a void proceeding, no subsequent action upon the sale could give it validity. A confirmation of a sale may cure mere irregularities not affecting its fairness, but not an infirmity growing out of the nullity of the judgment under which it was had.

The judgment below must, therefore, be reversed, and the cause remanded for a new trial; and it is so ordered.

## NOTE ON ENFORCING COMMON-LAW JUDGMENTS IN UNITED STATES COURTS.

It seems to have been generally supposed by the profession that the practice in common-law actions in the Federal courts in this State depended on the State practice for the time being, except (1) in matters specially regulated by U. S. statutes or court rules, and (2) in the enforcement of a judgment against the property of the debtor, as to which it depended on the State practice in force at the time of Federal rule adopting it, which in this the Southern District of New York was, for the circuit court, December 29, 1881, and for the district court, October 11, 1878.

The importance of the case in the text is twofold: 1. While it concedes that but for section 916 of U. S. R. S. relating to proceedings for the enforcement of such judgments, the State law for the time being would control, by virtue of section 914; it nevertheless holds that, in applying section 916, the words "against the property of the judgment debtor" do not restrict the qualification imposed by section 916 on section 914. And that a proceeding given by the State law after 1874 to get a judgment binding on the sureties of the judgment debtor, could not be pursued in the Federal court unless it had been adopted by rule of the Federal court. And (2) that a judgment obtained in such a proceeding, and sale had thereon, is void,

and not capable of confirmation by order of court. It will be observed that the court do not regard the proceeding by which the sureties came in as being a proceeding in the action, but as a proceeding after judgment, even though it was before the judgment against them.

The rules of the Federal courts in this district are as follows :

Circuit Court Rules ed. of 1887, p. 43. Adopted December 29, 1881.

" In pursuance of the provisions of sections 915 and 916, of an act [Act of Congress approved June 20, 1874], it is ordered, that the provisions of the Act of the Legislature of the State of New York, [N. Y. Code of Civil Procedure, passed June 2, 1876, as amended by the supplemental act passed May 6, 1880], and the provisions of any other act heretofore passed by said Legislature, amending either of said acts, so far as such provisions relate to a remedy by attachment against the property of a defendant, or to a remedy by execution or otherwise, to reach the property of a judgment-debtor are hereby adopted by this court as rules of this court, in respect to a remedy by attachment against the property of a defendant, in a common-law cause in this court, and in respect to a remedy by execution, or otherwise, to reach the property of a judgment-debtor, in a common-law cause in this court."

[Under this rule supplementary proceedings are not allowed upon decrees in equity causes.]

It seems to follow that sales on executions issued after September 1, 1887, and had before December 29, 1881, must stand or fall, not according to the Code of Civil Procedure, chapter 13 of which was in force in 1881, but according to the provisions of *Code Pro.* § 287, &c., and 2 R. S. 364, &c.

Other provisions which may be noted in this connection with the effect of the above rule, are the following :

The provision of section 1376, allowing execution in ejectment to issue after death of a defendant, was not in force in 1881, but brought in by amendment in 1885 (c. 515), 1887 (c. 682). And see section 1380 as amended in 1885.

Exemption from execution was extended by *L.* 1884, p. 112, c. 116, to the beneficiary fund paid to a widow by co-operative insurance company.

As to actions against members of association after judgment in action against the association appearing in the name of an officer,—the regulations of *L.* 1853, c. 153 ; *L.* 1851, c, 455 ; *L.* 1849, c. 258 ; *L.* 1869, c. 157, were revised in *Code Civ. Pro.* §§ 1923–1925.

Note on Enforcing Common-Law Judgments in U. S. Courts.

As to actions against partner not joined in previous actions,—*Code Pro.* § 136, subd. 4, was revised in 1880 in *Code Civ. Pro.* § 1946.

In the District Court the following rules touch the subject :

Adopted in 1838. Rule 14.— Where no specific process is provided by the rules, parties may have such process as is in use in like cases in the supreme court of the State.

Rule 241.—In all cases not provided for by the rules of this court, the rules of the circuit court of the United States for this district, for the time being (whether adopted before or after these rules), so far as the same may be applicable, shall regulate the practice of this court ; and, when there is no rule of the circuit court to apply, then the rules of the supreme court of this State, now in force, so far as the same may be applicable, shall govern.

Adopted October 11, 1878. "In pursuance of the provisions of section 915 of the act [Act of Congress, approved June 22, 1874], it is ordered that the provisions of the act of the Legislature of the State of New York, [N. Y. Code of Civil Procedure, passed June 2, 1876], and the provisions of any act heretofore passed by said Legislature, amending said last named act, so far as such provisions relate to a remedy by attachment against the property of a defendant, are hereby adopted by this court as rules of this court in respect to a remedy by attachment against the property of a defendant in a common-law cause in his court."

[Supplementary proceedings are allowed on judgments in common-law causes, but not on decrees in equity or admiralty.]

The changes in addition to those noted above, that may perhaps be material as to enforcement of district court judgments are as follows :

Action against joint debtor not served. *Code Civ. Pro.* § 1937 (adopted in 1880). Previously the remedy was on motion under *Code Pro.* § 136.

Assignability of money judgments is declared by a new provision in *Code Civ. Pro.* § 1912.

Attorney's authority to receive service of papers after judgment, which formerly depended in part on the Revised Statutes, and in part on common-law principles, (1 *Abb. New Prac.* 409–413, 638), is now, as to motion for leave to sue on judgment, regulated by provisions of *Code Civ. Pro.* § 1913, adopted in 1880. And see 1 *Abb. New Prac.* 416 *note.*

Contempt. Proceeding for contempt to enforce a judgment were in 1873 regulated by the Revised Statutes, 2 *R. S.* 534, etc. They are now regulated by *Code Civ. Pro.* § 14, 718, 1241, 2266, etc., etc.

Such proceedings, moreover, were not generally regarded as proceedings "in the action," even when taken before judgment, until, by the change introduced in 1880 by the Code of Civil Procedure, § 2273, the proceeding is declared to be in the action, unless an attachment is issued to bring the defendant in ; this being the doctrine of Pitt *v.* Davison, 3 *Abb. Pr. N. S.* 398 ; S. C., 37 *N. Y*, 235, which was approved and followed in Seely *v.* Black, 35 *How. Pr.* 369, 371, and People *v.* Campbell, 40 *N. Y.* 133, 137.

Execution against an association sued in the name of its officer.    The regulations of *L.* 1849, c. 258, §§ 1, 3, were revised in 1880, in *Code Civ. Pro.* § 1921.

Execution against executor or administrators.    Formerly regulated also by 2 *R. S.* 448, is the subject of new regulations in *Code Civ. Pro.* §§ 1816, 1817.

Execution on judgment against joint debtors, part of whom were not served.    The regulations of 2 *R. S.* 377, were revised in 1880 in *Code Civ. Pro.* §§ 1934, 1935, 1941.

Execution against a public officer as such.    The regulations of 2 *R. S.* 473, etc., were revised in 1880 in *Code Civ. Pro.* § 1931.

Execution in replevin.    Formerly regulated by *Code Pro.* § 289 and 2 *R. S.* 530.    Since 1880 by *Code Civ. Pro.* § 1731.

Joint debtors.    The proceeding to make a judgment which was obtained on service of part, binding on the others, was formerly by motion.    *Code Pro.* § 136; 2 *R. S.* 377, etc.    In 1880 the revision substituted an action.    *Code Civ. Pro.* § 1937.

Judgment against heir or devisee.    The effect under 2 *R. S.* 114, as above, of a proceeding against the executor, etc., was enlarged in 1880 by *Code Civ. Pro.* § 1821.

Lien of a judgment against joint debtors on service of part only. See *Code Civ. Pro.* 1936, adopted in 1880.

Supplementary proceedings were formerly deemed proceedings in the action.    *Code Pro.* § 292, etc.

Under *Code Civ. Pro.* § 2433, they are a "special proceeding," not an action within the meaning of that term as used in the Code, § 3333, 3334.

The following cases illustrate what, under various statutes and for various purposes, have been deemed *proceedings in the action,* and what a *new proceeding.*

Where a proceeding was begun by order to show cause procured in an action before final judgment, why a party should not be punished for contempt in violating an injunction order,—*Held,* that the proceeding was a proceeding in the action and not a special proceeding

within the provision of the Code of Procedure as to appeals from a final order in a special proceeding. Batterman *v.* Finn, 40 *N. Y.* 340. See also Brinkley *v.* Brinkley, 47 *N. Y.* 40.

Where an order was made that, unless the defendant comply with certain directions therein contained, an attachment should issue for a violation of an injunction order theretofore made in the action,—*Held*, that this was not an order affecting a substantial right in a special proceeding, but that it was made in the action, and was not a final order, but one preliminary to punishing the party alleged to be guilty of contempt. N. Y. & N. H. R.: R. Co. *v.* Ketchum, 3 *Abb. Ct. of App. Dec.* 347.

As to proceedings to punish an administrator for contempt in not complying with the provisions of a decree upon his accounting, see Woodhouse *v.* Woodhouse, 5 *Redf.* 131.

The distinction between the different modes of proceeding for contempt,—a proceeding in the action by an order to show cause, and a proceeding for an attachment,—is considered at length in a dissenting opinion in Matter of Nichols, 54 *N. Y.* 62, 70–74. See also People *ex rel.* Alexander *v.* Alexander, 5 *Supm. Ct.* (*T. & C.*) 297.

Under the Code of Procedure, proceedings supplementary to execution were proceedings in the action, and therefore notice of the appointment of a receiver of a foreign corporation in such proceedings need not be served on the corporation itself, but only upon its attorney. De Bemer *v.* Drew, 57 *Barb.* 438, 446.

An order punishing a party to an action as for contempt is not an order made in a proceeding in the action within the provisions of the Code of Procedure as to appeal from an order made in an action, but is an order made in a special proceeding. *So held*, on appeal from an order, made in supplementary proceedings for the production of books. Sudlow *v.* Knox, 7 *Abb. Pr. N. S.* 411. (Otherwise now, under the Code of Civil Procedure, § 2433, making such proceeding a special proceeding.)

A proceeding by attachment against an attorney to compel payment to the county treasurer of surplus moneys arising in an action of foreclosure in which he acted as attorney for the petitioners, is a special proceeding, and not a mere motion in the foreclosure suit; and hence costs are properly allowed as in a special proceeding. *Supm. Ct.*, 1887, Matter of Silvernail, 45 *Hun*, 575.

An order to show cause why the answer of a defendant should not be stricken out for refusal to obey an order made in an action to allow the plaintiff to inspect the defendant's books, is one of the ordinary proceedings in an action; and under Code Civ. Pro. § 799, service of the order and of the motion papers may be made on the attorney, and

need not be served on the defendant.    Rossner *v.* N. Y. Museum Asso., 20 *Hun,* 182.

An order made pending an action, giving a receiver appointed therein directions as to the leasing of real property involved in the action, is an order made in the action for purposes of appeal, and not an order in a special‚ proceeding, though the papers are ˙so entitled. Bolles *v.* Duff, 42 *N. Y.* 256.

The motions referred to in Code Pro. § 401, subd. 4,—prohibiting motions upon notice in the first judicial district in an action triable elsewhere,—are motions in the action while it is pending, or such as relate in some way to its pendency or procedure; and that section does not prohibit a sheriff, holding an execution upon a judgment rendered in the first judicial district, from moving in his own county in another district for directions as to the disposition of moneys collected by him, by levy and sale, under the execution.    Phillips *v.* Wheeler, 67 *N. Y.* 104; aff'g 16 *Abb. Pr. N. S.* 242.

This rule was applied and followed under Code Civ. Pro. § 769, in Curtis *v.* Greene, 28 *Hun,* 294, holding that a motion which related to proceedings had under the judgment after it had been entered, could regularly be made in another county than the county of New York where the judgment had been recovered and entered.    (The nature of the motion is not stated in the report.)

Under Code Civ. Pro § 769,—requiring a motion upon notice in an action triable in the first judicial district to be made in that district,— an application for an extra allowance of costs in an action tried therein, must be made in the first district, although the trial judge resides in another.    Hun *v.* Salter, 92 *N. Y.* 651.

A motion to set aside a judgment of divorce granted by default, and for leave to the defendant to come in and defend is a proceeding in the action, and the motion papers may be therefore properly served on the attorneys for the plaintiff in the judgment, although nearly two years have elapsed since the entry of the judgment. Miller *v.* Miller, 37 *How. Pr.* 1.

The papers upon a motion to set aside an attachment and an order for publication, made four years after the entry of judgment in the action, may be well served upon the plaintiff's attorney.    Drury *v.* Russell, 27 *How. Pr.* 130.

In an action for divorce an order of arrest was issued and a common law undertaking for the defendant's remaining amenable to process was given.    Decision was rendered in the action in July, 1868, but judgment was not entered thereon until 1874.    Meantime, in 1871, the defendant in the action, who had, before decision, left the State, returned, and was within the reach of process for several weeks.    *Held,*

that a notice of the fact of the defendant's presence in the State at the time to the plaintiff's attorneys was equivalent to notice to the plaintiff, and that the failure to issue a body execution against the defendant upon request of the surety, discharged him from liability. Toles *v.* Adee, 84 *N. Y.* 222, 241.

An appeal being a further proceeding in the same action and not a new one, an attorney by his general authority may, after judgment rendered, give a stipulation allowing an extension of the time to perfect an appeal. Hoffenberth *v.* Muller, 12 *Abb. Pr. N. S.* 221 ; following Struver *v.* Ocean Ins. Co,, 9 *Abb. Pr.* 23.

A service of a notice of appeal by an attorney other than the attorney of record in the court below, without due substitution, is a fatal irregularity. Thierry *v.* Crawford, 33 *Hun,* 366.