(55 App. Div. 68.)

HURST v. CITY OF NEW YORK.

DONOVAN v. SAME.

(Supreme Court, Appellate Division, Second Department.   November 23, 1900.)

MUNICIPAL CORPORATIONS—GREATER NEW YORK CHARTER—FIRE DEPARTMENT —MEMBERS—PROMOTION—SALARY.

Greater New York Charter (Laws 1897, c. 378) § 740, provides that members of the fire department should be divided into four grades, receiving, respectively, $1,400, $1,200, $1,000, and $800 per year; that members entering after January 1, 1898, should enter the fourth grade, and should be annually advanced one grade thereafter; that members of the fire department of the consolidated cities on January 1, 1898, when the act took effect, should become firemen of the grade to which a salary was attached equal to that previously received by them; that any Brook-

lyn fireman whose salary fell between two grades should within three years have his pay increased to $1,400 by equal annual additions; and that nothing in the section should affect the rights and privileges secured to the members of the various fire departments, except as therein provided. Section 722 provided that members of the fire departments of the several consolidated cities should become members of the fire department of the city of New York, and that they should be assigned to duty in their former grade, as nearly as possible. *Held*, that where a member of the Brooklyn fire department, entitled therein to annual promotion from grade to grade, was receiving, at the date of the consolidation, pay equal to that attached to one of the grades in the consolidated department, he was entitled to annual promotions to the next higher grade, and to receive the pay fixed therefor, since such promotion was one of the rights and privileges secured to him by the consolidation.

Appeal from trial term, Kings county.

Actions by George W. Hurst and by Cornelius D. Donovan against the city of New York to recover the difference between the pay received by them and that to which they were entitled under Greater New York charter. From judgments in favor of plaintiffs, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

William J. Carr (P. E. Callahan, on the brief), for appellant.

Hugo Hirsh, for respondents.

HIRSCHBERG, J. The two cases were tried together at special term, and the appeals were argued together in this court upon a single record. The plaintiffs are firemen on the uniformed force of the fire department of the city of New York, by transfer from the uniformed force of the fire department of the city of Brooklyn on January 1, 1898, the day consolidation was effected under the Greater New York charter (chapter 378, Laws 1897). The plaintiff Hurst was appointed February 1, 1896, and was receiving an annual salary of $1,000 at the time of consolidation; and the plaintiff Donovan was appointed January 18, 1892, and was receiving an annual salary of $1,200 at the time of consolidation.

By section 740 of the Greater New York charter it was provided that the uniformed members of the fire department should be divided into four grades, and should receive annual pay as follows: Members of the first grade, $1,400; members of the second grade, $1,200; members of the third grade, $1,000; and members of the fourth grade, $800. It was further provided in that section that members of the uniformed force appointed after January 1, 1898, should be assigned to the fourth grade; that after one year of service in that grade they should be advanced to the third grade, and should continue to be so advanced one grade each year of service, receiving the annual pay of the grade to which they were advanced. The section further provided that:

"All persons who, when this act takes effect, are firemen in the uniformed force of the fire department of the corporation heretofore known as the mayor, aldermen and commonalty of the city of New York, or of the city of Brooklyn, or of the corporation heretofore known as Long Island City, shall thereupon become firemen of that grade having a salary thereto attached

equal to the salary or compensation paid such firemen, respectively, at the time of the taking effect of this act: provided, however, that any such fireman who has been a member of the uniformed force in the city of Brooklyn, or in Long Island City, whose salary falls between any two of the grades hereby established, shall within three years have his salary made equal to the salary of the first grades by equal annual additions. Nothing in this section contained shall be construed to change in any way the salaries or grading, present or prospective, of the firemen who are or shall become members of the uniformed force of the New York fire department prior to January first, eighteen hundred and ninety-eight; and. nothing in this section contained shall be construed to affect in any other way than as provided herein the rights and privileges secured under the provisions of this act to uniformed members of the various fire departments consolidated into one department by this act."

By section 722 of the Greater New York charter it was also provided that:

"The officers and members of the uniformed force and legally appointed firemen in the corporation formerly known as the mayor, aldermen and commonalty of the city of New York, and in the city of Brooklyn and in the city of Long Island City are hereby made members of the fire department of the city of New York, as hereby constituted, and shall be assigned to duty therein by the fire commissioner, with the rank and grade now held by them, respectively, as nearly as may be practicable."

By the operation of the provisions of these two sections, the plaintiff Hurst became, on January 1, 1898, a member of the fire department of the city of New York of the third grade, and the plaintiff Donovan a member of that department of the second grade, and the defense to these actions, which have been brought to recover balances alleged to be due as advanced pay, is based upon the contention that there is no provision in the charter advancing them to a higher grade, after service in the grades to which they were transferred, respectively. There is a provision, as has been seen, for the advancement from year to year of all new firemen appointed after consolidation, and who are first assigned to duty in the fourth grade, and provision for equal annual additions to the pay of all firemen transferred from Brooklyn whose pay falls between any two of the grades; but none, says the defendant, for a fireman whose pay at the time of consolidation is exactly the same as that of any one of the grades created by the charter. The claim of the defendant is that Hurst must always remain in the third grade, and without an increase of salary, although, if he had been receiving only $900 at the time of consolidation, he would have been advanced to an annual salary of $1,400 within three years, and if he had been appointed as an inexperienced man to the fourth grade after January 1, 1898, he would have been likewise entitled to reach the highest grade at the end of three years' service. I say this is the defendant's claim, for it is the argument advanced orally and in the brief; but the defendant has practically admitted its injustice by actually paying the plaintiffs as though their respective salaries at the time of consolidation did fall between two of the grades established by the charter. The amount in controversy is therefore small, being only the difference between the amount of the three annual additions, and such additions as would attach to

advancements in grade on the anniversary of the plaintiffs' respective appointments.

The intention of the charter was undoubtedly to promote efficiency by the stimulus of annual promotions. The intention was also to be just, fair, reasonable, uniform, and undiscriminating. If men receiving small pay because of little or no experience were to be preferred and advanced over the heads of veterans, the system would lack an essential element of success. So, too, the unjust discrimination involved in the construction placed on the charter by the defendant would be fatal to the practical value of the force. Such a condition in the charter could only result from an oversight, a palpable but unintentional omission, and an examination of the language does not indicate such omission or oversight. If there were nothing but the provision for the annual advancement of the fourth-grade men, I should not hesitate individually to hold that the language was broad enough to entitle any one serving in the second and third grades to be advanced at the end of the year, whether or not he had been originally appointed in the fourth grade. Within the scope and purpose of legislation like this, any provision which permits an appointee to commence at the foot of the ladder, and to reach the top by promotions founded on no other merit than the lapse of time, necessarily implies that he should carry with him whoever he meets on his way up.

But I think the provision that nothing in section 740 shall be construed to change the grading, present or prospective, of the old New York firemen, nor to affect the rights and privileges of the members of the other fire departments now consolidated into one, covers the point, and determines the issue in favor of the plaintiffs. The members of the uniformed force of the New York fire department at the time of consolidation were divided into three grades, having annual salaries of $1,400, $1,200, and $1,000 attached, with a scheme of progression from grade to grade at the end of each year's service. Chapter 269, Laws 1895. The members of the Brooklyn fire department at the same time were also divided into three grades, having annual salaries attached not to exceed, respectively, $1,200, $1,100, and $1,000, with a similar scheme of progression from grade to grade at the end of each year's service. Chapter 583, Laws 1888, tit. 13, § 6. By section 740 the framers of the greater charter provided for the retention of these schemes of progression by enacting as to the first one that nothing in the section should be construed to change in any way the salaries or grading, present or prospective, of the firemen of the former city of New York, and by enacting as to the second one that nothing in the section should be construed to affect the rights and privileges secured by the charter to the Brooklyn firemen. The learned counsel for the defendant admit that the first of these provisos relates to the grading scheme contained in chapter 269 of the Laws of 1895, but deny that the second proviso relates to the provision for the grading and advancement of firemen under the Brooklyn charter. They base the argument on the use by the framers of the greater charter of the words "this act" in the expression, "the rights and privileges secured under the pro-

visions of this act," as indicating that the rights and privileges referred to are only those conferred by the provisions of the greater charter. But the use of the word "secured" in this connection seems quite significant, and positively forbids the defendant's construction. It implies rights and privileges not created or conferred by the act, but secured—that is, confirmed, made fast and safe—by it to those entitled thereto. In other words, it implies rights and privileges conferred by some other act, and secured to the beneficiaries by this one. · Read together, and in view of the same connected subject and object, the two provisions are, in effect, that nothing in the section shall be construed to change the right of advancement in the grades belonging to the New York firemen, or to affect the same right belonging to the Brooklyn firemen, and which is thus secured to them under the provisions of this act. This construction gives life and force and meaning to the provisions of the section, and indicates that the legislature has not committed the act of gross injustice and folly which the defendant asserts. The other construction makes the provision wholly meaningless; for no intelligent idea would be conveyed by the statement that nothing contained in section 740 of the charter should be construed to affect the rights and privileges conferred by other provisions of the charter in any other way than as stated therein. The section only becomes intelligible when it is perceived that the rights and privileges referred to are those previously existing, and not then created, and which are guarantied to the possessors by words suggestive of security in their continued enjoyment.

The language employed by the framers of the charter may not be apt and precise, but the intention to treat all equally and alike is undoubted; and, after all, the intention controls in statutory construction. As was said by Judge Earl in Riggs v. Palmer, 115 N. Y. 506, 509, 22 N. E. 188, 5 L. R. A. 340:

"It is a familiar canon of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers. The writers of laws do not always express their intention perfectly, but either exceed it or fall short of it, so that judges are to collect it from probable or rational conjectures only, and this is called 'rational interpretation'; and Rutherforth, in his Institutes (page 407), says: 'When we make use of rational interpretation, sometimes we restrain the meaning of the writer so as to take in less, and sometimes we extend or enlarge his meaning so as to take in more, than his words express.'"

The judgments should be affirmed.

Judgments affirmed, with costs. All concur.