(157 App. Div. 394.)

### DREW v. VILLAGE OF WHITE PLAINS.

(Supreme Court, Appellate Division, Second Department. June 13, 1913.)

1. MUNICIPAL CORPORATIONS (§ 230*) — PUBLIC WATER SUPPLY — STATUTES — AUTHORITY TO CONTRACT.

Laws 1896, c. 769, providing for a supply of water to the village of White Plains, and creating a board of water commissioners for such village, provided by section 3 that the commissioners might acquire by condemnation or purchase any lands, water rights, etc., from either individuals or water companies, with the same right to operate such property, and the right to purchase or construct necessary works, and by section 14 that the net income should be used for increasing the capacity of such works or the supply. The board acquired a municipal plant which was inadequate, and was obliged to purchase water and contracted with the individual plaintiff for not less than 1,000,000 gallons a day, to be delivered at a fixed rate. *Held* that, since the commissioners were not appointed or removable by the municipal authorities, the Legislature intended to create a body to provide an adequate supply, and that the contract with plaintiff was not ultra vires.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 230.*]

2. STATUTES (§ 184*)—CONSTRUCTION—POLICY AND PURPOSE OF ACT.

In construing statutes, that sense should be adopted which harmonizes best with the context, and most fully promotes the apparent object of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. § 184.*]

3. STATUTES (§ 189*)—CONSTRUCTION—INTENTION OF LEGISLATURE.

The intent of the Legislature is the object of all construction, and inconsistencies in a statute are to be harmonized and their literal or usual meaning ignored, if thereby the intent can be arrived at.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. § 189.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. STATUTES (§ 189*)—CONSTRUCTION—LANGUAGE.

The exact and literal meaning of a statute may be rejected if upon a survey of the whole act and the purposes to be accomplished it is plain that such wording would not carry out the legislative intent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. § 189.*]

5. STATUTES (§ 211*)—CONSTRUCTION—TITLE OF ACT.

The title of an act may be regarded for the purpose of arriving at the real meaning of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. § 211.*]

6. MUNICIPAL CORPORATIONS (§ 230*)—PUBLIC WATER SUPPLY—POWERS OF WATER COMMISSIONERS—"SERVICES"—"SUPPLIES FURNISHED OR TO BE FURNISHED."

Under Laws 1896, c. 769, § 8, to provide a supply of water to a village, providing that the board of water commissioners should not contract with any individual or corporation for any services rendered or to be rendered for supplies furnished or to be furnished for a period more than one year, the board's contract with an individual to furnish water was not a contract for "services" nor one for "supplies furnished or to be furnished," so that the limitation of one year did not apply.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 7, pp. 6430–6433.]

7. MUNICIPAL CORPORATIONS (§ 230*)—PUBLIC WATER SUPPLY—TERM OF CONTRACT.

The General Village Law has no application to the water commissioners of a village appointed under a special statute; and hence their contract for the purchase of water was not void because made for more than five years.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 654–656; Dec. Dig. § 230.*]

Carr and Stapleton, JJ., dissenting.

Action by John A. Drew against the Village of White Plains. Submission of controversy on agreed statement of facts, under sections 1279–1281 of the Code of Civil Procedure. Judgment for plaintiff pursuant to stipulation.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and STAPLETON, JJ.

H. Snowden Marshall, of New York City (John Caldwell Myers, of New York City, on the brief), for plaintiff.

Frederick B. Van Kleeck, Jr., Corp. Counsel, of White Plains, for defendant.

RICH, J. This is a submission of a controversy under the provisions of sections 1279–1281 of the Code of Civil Procedure, and it involves the construction of chapter 769 of the Laws of 1896, entitled "An act to provide for supplying the village of White Plains with water and authorizing the issue of bonds therefor, and to create a board of water commissioners for said village." When this statute was enacted, the village of White Plains was obtaining its supply of water from the Westchester County Waterworks Company. The

plant of this company was subsequently acquired under said act by defendant, but the supply was found to be so inadequate that in the years 1906, 1907, 1909, and 1910 the village was compelled to purchase water from the city of New York at the cost of $133 per million gallons, and to pump the same into its mains at an additional cost of $18 per million gallons. It appears that in the year 1910 the village purchased 107,552,400 gallons in 179 days. On May 7th the city of New York was unable to furnish any water to defendant, and discontinued the supply. On June 27th following the plaintiff entered into a contract with the board of water commissioners of defendant, by which he undertook to furnish the defendant for the period of 15 years, not less than from one to three million gallons of water per calendar day at defendant's option, at the rate of $80 per million gallons for the first million gallons and $75 per million gallons for the next two million gallons or fractions thereof. The water board agreed to take not less than one million gallons daily delivered in the village mains, and to pay therefor at the rate stated.

At the time the contract was made, the source of defendant's water supply consisted of two storage reservoirs and five caisson wells, operated by the water commissioners, and it was wholly inadequate to supply the inhabitants of the village with the necessary quantity of pure and wholesome water, and not sufficient for fire protection or other public purposes, and there was no additional supply available except that of plaintiff. In October, 1910, the city of New York granted permission to the commissioners to take from the water running over Kensico dam a limited supply. The plaintiff has complied with the terms of his contract, and at the time of the commencement of this proceeding there was unpaid and due him on account of water delivered to defendant $8,384.63.

[1-5] It is contended by defendant that the board of water commissioners had no authority to purchase water, and that the contract with the plaintiff is ultra vires. The act is entitled "An act to provide for supplying the village of White Plains with water," etc. Section 3 provides:

"The board of water commissioners is hereby directed and empowered to acquire by purchase, or by proceedings for the condemnation of real property, * * * any lands, easements, water rights, dam, water plant, water mains and connections, laterals and appurtenances, whether owned or possessed by individuals or water companies, incorporated pursuant to the laws of this state, and said water commissioners shall have the same authority over and the same right to operate and use any and all property, rights and extensions, made by said company or individuals as such commissioners have within the limits of said village. * * * And said water commissioners shall have the exclusive right and power to make all necessary arrangements, regulations and contracts for supplying said village with water, and to purchase, construct or extend all works needful for that purpose; and to that end they are hereby empowered to purchase, take and hold, in the corporate name of the village of White Plains, any real estate, easements, or any other interests in real estate or property required for such purpose, and by themselves, their servants and agents, may, after agreement with such owner or owners, or after just compensation has been ascertained and provided for, enter upon the lands of any person or persons, * * * construct, alter, repair and replace any pipes, conduits, aqueducts or other works necessary to furnish an ample supply of water at any time."

Section 14 provides that the net income shall be used for paying bonds when due or "extending the necessary pipes throughout the village, or to increasing the capacity of the works or the supply or both or all, as such board may, in judgment, determine." The board acquired a municipal plant under this act by condemnation, but it was inadequate for the village supply, and they were forced to purchase water of the city of New York for several years. It could not condemn the water supply furnished by plaintiff, for it did not exist. The purpose of the Legislature was to enable the defendant to obtain a sufficient supply of pure and wholesome water. We are concerned upon this appeal with the question as to whether it was intended to authorize the purchase of water for village purposes.

In construing statutes that sense should be adopted which harmonizes best with the context and promotes in the fullest manner the apparent policy and object of the Legislature. Manhattan Co. v. Kaldenberg, 165 N. Y. 1, 58 N. E. 790. The intent of the Legislature is the object of all construction, and inconsistencies in a statute are to be harmonized and their literal or usual meaning ignored if thereby the intent can be arrived at. People ex rel. Gress v. Hilliard, 85 App. Div. 507, 83 N. Y. Supp. 204. The canon of construction is that a thing which is within the intention of the Legislature is within the statute, though not definitely expressed. Riggs v. Palmer, 115 N. Y. 506–509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; People ex rel. Wood v. Lacombe, 99 N. Y. 43, 1 N. E. 599. The exact and literal wording of a statute may be rejected, if, upon a survey of the whole act and the purposes to be accomplished, it is plain that such exact or literal rendering of the words would not carry out the legislative intent, and the title of the act may be regarded also for the purpose of arriving at the real meaning of the Legislature. Bell v. Mayor, 105 N. Y. 139, 11 N. E. 495; Delafield v. Brady, 108 N. Y. 524, 15 N. E. 428; Weiler v. Newbach, 47 Hun, 166; Peck v. Baldwin, 58 Hun, 308, 11 N. Y. Supp. 792.

The board of water commissioners is not a subsidiary body appointed or removable by the municipal authorities; they are elected for a stated term, and the Legislature intended to create a body charged with the duty to provide an adequate supply of water for the necessities of the village, and it gave them the power to do this. I cannot agree with the contention that the act limits the power of the board of water commissioners to the construction and operation of a municipal plant. After having acquired a plant, I think it had the right, if necessary, to increase its water supply by any reasonable method. Although this precise question has not been before the courts of our state, the principle involved has been considered by text-book writers, and it has been held in sister states that any power sufficient to authorize a municipality to provide a supply of water or light in the absence of special restrictions carries with it the authority to make a proper contract with an individual or corporation therefor. 2, 3 Dillon on Munic. Corp. (5th Ed.) §§ 704, 1302; Reed v. City of Anoka, 85 Minn. 294, 88 N. W. 981; National Foundry & Pipe Works, Ltd., v. Oconto Water Co. (C. C.) 52 Fed. 29; Illinois Trust & Savings

Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Jack v. Village of Grangeville, 9 Idaho, 291, 74 Pac. 969; State ex rel. Ellis v. Tampa Waterworks Co., 56 Fla. 858, 47 South. 358, 19 L. R. A. (N. S.) 183; City of Newport v. Newport Light Co., 84 Ky. 166.

Attention is directed to Matter of Water Commissioners of White Plains, 176 N. Y. 239, 250, 68 N. E. 348, 351, and it is insisted that the language, "such board" (board of water commissioners) "only has the power to act for the village and make valid contracts with reference to the acquiring of property for waterworks," is absolutely controlling in the case at bar. The learned counsel misapprehends the application of the section he quotes. The question presented in that case was the method of determining the value of the plant of the company it subsequently acquired. There was no question as to the power of the water commissioners, and the words quoted were not used as a limitation on the powers of the commissioners, and I think that they had power to make the contract in suit.

[6] It is next contended that the contract is void because it covers a period longer than one year. This contention is predicated upon the provision of section 8 of the statute creating the water board as follows:

"Said board of water commissioners shall not, however, have the right to contract with any individual, corporation or body politic for any service rendered or to be rendered or supplies furnished or to be furnished for a longer period than one year."

The contract is not one for services. It is an agreement for the purchase of water, nothing else; and the unit is "gallons," not hours or days. The contract obligation was expressly limited to the purchase of a commodity necessary for defendant's existence, at a fixed price and for a definite period of time, nor can the contract be defeated as being one for "supplies furnished or to be furnished"; the word in the statute is plural, and does not apply to the water to be furnished by the plaintiff. Gleason v. Dalton, 28 App. Div. 555, 51 N. Y. Supp. 337; Harlem Gas Co. v. Mayor, etc., 33 N. Y. 309; Farmers' Loan & Trust Co. v. Mayor, 4 Bosw. 80.

[7] The General Village Law has no application to the water commissioners, and there is therefore no force in the suggestion that the contract is void because it is made to cover a greater period than five years. I am of the opinion that the contract is a valid obligation against the defendant and that the plaintiff is entitled to judgment.

Judgment is awarded, pursuant to the stipulation, to plaintiff against the defendant for $8,384.63, with interest on $1,203.34 from December 10, 1910, on $2,403.04 from January 10, 1911, on $2,480 from February 10, 1911, and on $2,208.25 from March 10, 1911, with costs.

JENKS, P. J., and THOMAS, J., concur. CARR and STAPLETON, JJ., dissent on the ground that the contract in question was beyond the statutory power of the commissioners.