Emanuel Patrikes et al., Plaintiffs, *v.* J. C. H. Service Stations, Inc., Defendant.[*]

City Court of New York, Special Term, Queens County, March 29, 1943.

[*] See, also, *J. C. H. Service Stations, Inc.,* v. *Patrikes,* 181 Misc. 401. — [Rep.

*Harry Meisnere* for plaintiffs.

*Silberman & Steinfeld* for defendant.

CONROY, J. This is a motion for summary judgment in an action by three individuals, lessees, for the return of $1,500 deposited with the defendant, lessor, as security for the performance of a lease of premises upon which plaintiffs conducted a gasoline station. The lease and security had been assigned to the plaintiffs with defendant's consent.

By letter dated October 30, 1942, the three plaintiffs advised the defendant landlord that they would vacate the premises on November 30, 1942. The notice is grounded upon the purported authority of section 304 of the Soldiers' and Sailors'

Civil Relief Act of 1940. (U. S. Code, tit. 50, Appendix, § 501 *et seq.* as amd.)

The complaint alleges that prior to the 30th day of October, 1942, the plaintiff Mimoni was inducted into the armed forces of the United States.

As to plaintiff Leapes, the complaint alleges that he was ordered to report for induction on December 3, 1942, but the date upon which he received the order does not appear either from the complaint or the affidavits upon this motion, so that the court is not now in a position to determine whether the notice given is effective with respect to Leapes, under the provisions of section 106 of the Act (U. S. Code, tit. 50, Appendix, § 516), which extends the benefits of section 304 (U. S. Code, tit. 50, Appendix, § 534) to persons ordered to report for induction from the date of the receipt of the order. As to plaintiff Patrikes, so far as the court knows, he is not in the armed forces, nor has he ever been ordered to report for induction.

The amendment of October 6, 1942, so far as material, added the following new provisions:

" Sec. 304.

(1) The provisions of this section shall apply to any lease covering premises occupied for dwelling, professional, business, agricultural, or similar purposes in any case in which (a) such lease was executed by or on the behalf of a person who, after the execution of such lease, entered military service, and (b) the premises so leased have been occupied for such purposes, or for a combination of such purposes, by such person or by him and his dependents.

(2) Any such lease may be terminated by notice in writing delivered to the lessor (or his grantee) or to the lessor's (or his grantee's) agent by the lessee at any time following the date of the beginning of his period of military service. * * * "

There follow provisions concerning the manner of service of the notice, the time when it takes effect, and the return of rent paid in advance, neither of which is involved here. It is then provided: " Upon application by the lessor to the appropriate court prior to the termination period provided for in the notice, any relief granted in this subsection shall be subject to such modifications or restrictions as in the opinion of the court justice and equity may in the circumstances require."

It is of moment to note at once that the power so conferred by the last-quoted clause lies dormant, and there is no occasion for its exercise, unless the lessor chooses to invoke it prior to the taking effect of the notice. No such application has been made

here. In the absence of such an application. the effect of the specific mandate of section 304 (U. S. Code, tit. 50, Appendix, § 534) is that, with respect to a lessee of premises of the character therein described, who after the execution of the lease has entered military service, the lease is *ipso facto* terminated, and his obligation thereunder ceases, upon the taking effect of the notice upon either of the two dates stated in said section, as the case may be. Thereupon, any rental paid in advance, beyond the date of termination, shall be refunded; section 304 so explicitly directs.

The Act is silent as to the return of the security upon the lease. Is the deposit within the scope of the statute? Is it to be returned? The inquiry involves a construction of section 304, with the object of discovering and carrying out the legislative intent. Judicial interpretation is rendered necessary for the reason that the language and command of the enactment do not expressly comprise the proposition at issue. (*Drew* v. *Village of White Plains,* 157 App. Div. 394; *Glennie* v. *Falls Equipment Co.,* 238 App. Div. 7, 11; *Murphy* v. *County of Westchester,* 265 App. Div. 162.)

Three questions are presented. The first is basic: Where a lease for premises within the class stated in section 304 is executed by a single lessee and is terminated as above stated, must the deposit be refunded to such a lessee?

The second question is subordinate to the first: Where the lease was executed by two or more lessees, who are partners, does the subsequent entry into military service of one partner terminate the lease as to him, and entitle him to a refund of his share of the deposit?

The third question involves a distinct and different situation: Do the benefits of section 304 extend to the remaining partners, or partner, so as to terminate the lease also as to them, or him, with the right to recover their or his share of the deposit?

The enactment is of recent origin, and the propositions do not appear to have been passed upon by any court. The decision must therefore depend upon fundamental principles to be consistently applied without relaxation of judicial temper, despite the intense agitation of war.

The inquiries must be solved within the compass of settled rules. We are to glean from the context of the Act the meaning intended to be put there, but not expressed by the recorded word. The cardinal object, the " great and controlling principle ", is the ascertainment of the true intention of the legislative mind. (*People* v. *Ryan,* 274 N. Y. 149, 152.) The spirit

rather than the letter of the law determines the construction which should be given to it. (*Riggs* v. *Palmer,* 115 N. Y. 506.) The focal consideration is whether the spirit and purpose of the Act find fair expression in the statute (*People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43, 49), and " Adherence to the letter will not be suffered to ' defeat the general purpose and manifest policy intended to be promoted ' " (*Surace* v. *Danna,* 248 N. Y. 18, 20, 21).

To gather the true intention and give it " force and meaning " (*Hurst* v. *City of New York,* 55 App. Div. 68), the language of the enactment must be read not only with a consideration of its origin and professed objects, the necessity therefor, and the circumstances which occasioned it (*People ex rel. Collins* v. *Spicer,* 99 N. Y. 225, 233; *Edison Elec. Illuminating Co.* v. *Frick Co.,* 221 N. Y. 1, 5; *Matter of Jannicky,* 209 N. Y. 413, 418; *Matter of Frasch,* 245 N. Y. 174, 180; *Vanderweghe* v. *City of New York,* 150 Misc. 815) but the court should give heed to the particular evil which the statute sought to remedy. (*Psota* v. *Long Island R. R. Co.,* 246 N. Y. 388, 393; *Glennie* v. *Falls Equipment Co.,* 238 App. Div. 7, 11, *supra.*)

The presumption is always that no unjust or unreasonable result was intended (*Matter of Meyer,* 209 N. Y. 386), which precludes the adoption of a construction producing such an effect (p. 389; *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Smith* v. *People,* 47 N. Y. 330), as it would be unreasonable to say " that the law-makers designed to secure a result which would be antagonistic to their plain and clear intention " (*People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43, 49, 50, *supra; Davis* v. *Supreme Lodge,* 165 N. Y. 159, 170), while, on the contrary, no narrow construction may thwart the legislative design. (*Spencer* v. *Meyers,* 150 N. Y. 269, 275; *Surace* v. *Danna, supra.*) If the purpose is reasonably within the scope of the language used, the court must take it "to be a part of the statute the same as if it were plainly expressed " (*Matter of Meyer, supra; People ex rel. Collins* v. *Spicer, supra*). The rule " is abundantly supported by authority and variously illustrated in the cases." (*Topham* v. *Interurban Street Ry. Co.,* 96 App. Div. 323, 327.)

In search for guidance, we are to construe the provisions of section 304 by examining the whole context of the Act, so as to collect the particular meaning *ex antecedentibus et consequentibus.* (*People ex rel. Mason* v. *McClave,* 99 N. Y. 83, 89.)

By so doing, it is readily ascertained that the primary desire of Congress is to give protection to the soldier first (Act, §§ 100, 201, 204, 302; U. S. Code, tit. 50, Appendix, §§ 510, 521, 524,

532), and to his dependents next (Act, §§ 303, 306; U. S. Code, tit. 50, Appendix, §§ 533, 536), to prevent or remedy any undue hardship resulting to them, and this accentuates the aim of Congress. The object is to relieve the soldier from the consequences of his handicap in meeting financial and other obligations incurred prior to his call to duty, so that his energies may be devoted to his military duties, unhampered by mental distress occasioned by the consequences to him or to his dependents flowing from his inability to meet his obligations.

This fundamental policy of exemption " is a token of intention to be ranked as first and foremost " (*Surace* v. *Danna,* 248 N. Y. 18, 20, 21, *supra*). Statutes enacted for the benefit of persons in the military service are in furtherance of public policy, which exempts such persons in various ways, even in time of peace (*Andrews* v. *Gardiner,* 185 App. Div. 477, *People* v. *Campbell,* 40 N. Y. 133); but, though they are remedial in character, they may not be invoked for any " needless or unwarranted purpose ", but must be administered " to accomplish substantial justice " (*Hunt* v. *Jacobson,* 178 Misc. 201, 205).

That the lease would be terminated if the soldier were the sole lessee is the plain intent of the statute, expressed in apposite language, as already stated.

Is the lease " terminated " where the soldier is a colessee with others who are not in the service? A literal and fair reading of section 304, in the light of the Congressional policy evinced by the provisions of the Act anterior and posterior to section 304, and by the application of the foregoing rules of construction, produces a moral conviction that with respect to the soldier, plaintiff Mimoni, but only so far, the lease was terminated when the notice took effect. That is, the lease was not abrogated *in toto,* but only his liability thereunder ceased. The crux of this view is predicated upon the fact that the enactment is directed to relieving only the individual who goes forth in the armed forces, and his dependents.

So interpreted, the literal meaning of the provisions of section 304 is revealed to be consistent with the general policy behind it. The fact that no provision had been made in the Act of 1940 with respect to leases, and that the amendment extended protection to lessees going into the service, is a material and sure signpost to the legislative mind, namely, to relieve the soldier and his dependents from the obligations under the lease as well as other classes of instruments. That the soldier was a colessee with his partners does not operate to deprive him of the beneficial protection of the amendment. Adherence to the

theme of the whole Act compels the view that the privileges and exemptions conferred by it inure to the benefit of the person intended, no matter how far his interest may be commingled with those of others who are not embraced either within the letter or the spirit of the enactment. As to the soldier, no intermixing of business relationship could operate to frustrate the controlling object to relieve him of obligations previously incurred in civilian life. The protective arm of the sovereign which confers an exemption or an immunity upon a handicapped citizen follows through beyond the letter of the Act, and vitalizes the letter so as to comprehend and expound its evident spirit and meaning equitably. (*Surace* v. *Danna, supra; Riggs* v. *Palmer,* 115 N. Y. 506, *supra; Yates Co. Nat. Bank* v. *Carpenter,* 119 N. Y. 550; *Benedict* v. *Higgins,* 165 App. Div. 611.) The paternal policy of the Act and " The broad spirit of gratitude " towards persons in the military service of the United States, which prompted the Act, " should control the courts in enforcing it " (*Benedict* v. *Higgins, supra,* 614). So construed, the amendment accomplishes the purpose for which it was enacted, and leaves the soldier disentangled to pursue his fight for our material and spiritual heritage, and free to devote his entire energy to the defense needs of the nation.

If the soldier plaintiff were the sole lessee, would he be entitled to a refund of the deposit upon the termination of the lease, namely, upon the taking effect of the notice? The lease having come to an end by operation of law, the soldier no longer has it in his power to continue performance, and it would seem, upon equitable principles, that the lessor should not be permitted to retain a security for the faithful performance of that which has become impossible through the command of the sovereign. In such a case further performance is excused upon common-law principles of uniform application. The doctrine finds its genesis in antiquity, and is to the effect that where the party is disabled from performing his contract through the act of subsequent law, the obligation to perform is discharged, upon the ground, *inter alia,* that the legislative mandate which prevents fulfillment in effect repeals the covenant. (See authorities in *Adler* v. *Miles,* 69 Misc. 601, SEABURY, J., involving the prohibition by ordinance of the use of premises as intended by the lessee.) The ruling there made, and never questioned, was later applied to prevent recovery of rent from a lessee who had been drafted into the army in the World War, and thereby compelled to abandon his business. (*State Realty Co.* v. *Greenfield,* 110 Misc. 270.)

The position of the remaining partners stands on different ground. The soldier's status does not operate to release the partners who are not called to service. The Act does not expressly or by implication extend its benefits to any person other than the person entering the service and his dependents. The Congressional command may not be extended to embrace a class of persons plainly not within the limited compass or scope of the whole Act. The suggestions that partners may be viewed as " dependents " in a sense, under section 304, is discarded at once. Partners, as such, are not within the category of dependents under the provisions of the Servicemen's Dependents Allowance Act of 1942 (U. S. Code, tit. 37, § 201 *et seq.*), defining dependents of persons in the service. Nor, apart from the enactment, is a partner, as such, " one who looks to another for support and maintenance; * * * for the reasonable necessities of life " (12 Words & Phrases 89).

A partnership " is an association of two or more persons to carry on as co-owners a business for profit " (Partnership Law, § 10). The partners are jointly liable with respect to their contractual obligations. (§ 26, subd. 2; *Caplan* v. *Caplan,* 268 N. Y. 445; *Gomez* v. *Vazquez,* 177 Misc. 874.) The creditors upon such obligations may look primarily to the joint property for their satisfaction, but if that is insufficient each of them is liable severally to pay the whole debt out of his individual property. (*Matter of Peck,* 206 N. Y. 55, 60; *People* v. *Knapp,* 206 N. Y. 373.) The rule is grounded in the common law. (*Seligman* v. *Friedlander,* 199 N. Y. 373.) This individual liability dates back to the time when the obligation was incurred, and arises simultaneously with the joint liability, so that with respect to the ultimate rights of the creditor, in theory of law, the contractual obligation of a partnership is incurred by all and by each. (*People* v. *Knapp, supra,* 382.) " Upon each partner rests an absolute liability for the whole amount of every debt due from the partnership; (Parsons on Partnership [2 ed.], 63); and although originally a joint contract, it may be separate as to its effects. * * * Each partner is answerable for the whole, and not merely for his proportionable part " (*Judd L. & S. Oil Co.* v. *Hubbell,* 76 N. Y. 543, 546. See Mechem, Elements of Partnership, § 209).

When a partner ceases to be associated in the carrying on of the business, so that the relation of the partners is changed, a dissolution is effected for all purposes except liquidation. (Partnership Law, §§ 61, 62, 70.)

But the fact of dissolution does not, by itself, discharge the existing contractual liability of any partner (Partnership Law, § 67), without an express or implied agreement between himself, the partnership creditor and the partnership continuing the business (subd. 2), or without a novation (subd. 3). In the absence of such factors, the retiring partner's liability upon the contracts of the partnership made before dissolution continues as that of a principal or, more appropriately, as a coprincipal debtor. (*Mutual Life Ins. Co. of N. Y.* v. *Polhemus,* 76 Misc. 449; *Advance Rubber Co.* v. *Bershad,* 125 Misc. 826; *Lansing Liquidation Corp.* v. *Heinze,* 184 App. Div. 129.) The doctrine is clearly stated by Rowley on Modern Law of Partnerships, page 773: "Dissolution of a firm does not abrogate firm contracts nor change the liability of the partners to third persons on firm contracts". The rule obtains with respect to the liability of a retiring as well as the remaining partners, specifically, as to a lease. (*Mutual Life Ins. Co. of N. Y.* v. *Polhemus, supra.*) Such is the fixed doctrine of the common law.

The Act ordains nothing to the contrary. Its silence on the question of liability of joint obligors upon a lease is significant in that implicit in the Act in other respects is a provision that, where the civil rights of a person in service with respect to an obligation are not prejudiced, any action in which he is involved may nevertheless proceed against the others by leave of the court (§§ 100, 201, 204; U. S. Code, tit. 50, Appendix, §§ 510, 521, 524). The aim is to conserve the interests of all parties [§ 302, subd. (2), pars. (a), (b); U. S. Code, tit. 50, Appendix, § 532]. As applied here, the rights of the lessor and the lessees are to be protected. Indeed, upon application by the lessor defendant here, the court might have modified or restricted the termination of the lease as "justice and equity may in the circumstances require" [§ 304, subd. (2); U. S. Code, tit. 50, Appendix, § 534]. The omission in section 304 of any specific disposition of, or reference to, the liability of joint obligors upon a lease is indicative, therefore, of the legislative intention not to change the settled rule as to joint contractual obligations above adverted to. The lawmakers "may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied" (*Psota* v. *Long Island R. R. Co.,* 246 N. Y. 388, 393, *supra*). Even then, "The decision in all the cases proceeded upon the ground that statutes changing the common law are to be strictly construed, and the latter will be no further abrogated than the clear import

of the language used in the statute absolutely requires " (*Dean v. Metropolitan E. Ry. Co.,* 119 N. Y. 540, 547). Had Congress intended to abrogate a lease *in toto* so as to end the liability of joint obligors thereon, it must be inferred that it would have so declared in express terms. In this aspect, therefore, the maxim *expressio unis est excluso alterius* supplies the controlling rule, so as to exclude from the benefits of the Act all persons other than the class therein stated. (*Aultman Taylor Co. v. Syme,* 163 N. Y. 54, 67; *Jackson* v. *Citizens Casualty Co.,* 277 N. Y. 385, 390; *Scott* v. *Dickerson,* 169 Misc. 1047.)

Applying the foregoing rules at bar, it is manifest that the partnership was dissolved upon Mimoni's induction because his association with the business was thereby severed. The Act, the induction and the notice, all the result of governmental power, concurred in producing his discharge from further liability on the lease in exactly the same manner, and to the same extent, as if he were the sole lessee. As to him, the terms of the lease became impossible of further performance. To that extent, the Act operates to release him and him only. In so doing, the Act embodies the salutary doctrine of the common law. But it does nothing more. It does not render the terms of the lease impossible of performance. The partnership being dissolved by operation of law, the remaining partners were at liberty to continue the business by themselves or with a new partner. Nothing in the Act evinces or contemplates a different design or effect.

So construed, no violence results to the legislative mandate. The result achieved is brought into harmony with the statutory spirit and intent. The soldier's liability comes to an end, and he is relieved from any hardship or distress which might result from his enforced inability of further compliance. But the liability of the remaining partners continues jointly, as before, between them and the lessor. Each of them is bound for the whole obligation, and this duty is not altered or impaired by the discharge of the joint obligor. As the obligation was incurred by all and by each at the beginning (*People* v. *Knapp,* 206 N. Y. 373, *supra*), it continues intact to the end. More than that: " Each partner is answerable for the whole, and not merely for his proportionable part " (*Judd L. & S. Oil Co. v. Hubbell,* 76 N. Y. 543, 546, *supra*).

Elementary considerations of fairness as to persons whose performance has not been rendered impossible support this conclusion. Partnerships there are galore in this industrial and agricultural land. In law, they comprise unincorporated associations and joint stock companies, which, while having little in common with a partnership (*People ex rel. Platt* v. *Wemple,*

117 N. Y. 136), still have the attribute, material here, of a general partnership under the Partnership Law, in that each member is liable upon the contractual obligation of the association as a partner (General Associations Law, §§ 2, 13; *Messler* v. *Schwarzkopf & Dorer*, 35 Misc. 72; *People ex rel. Winchester* v. *Coleman*, 133 N. Y. 279; *Ludlum* v. *Wagner*, 212 App. Div. 779, in which there were 145 members). When one of the partners or members joins the colors, are the rest to be discharged upon their lease contract? If that may be done as to a partnership of three, no reasonable ground avails to exclude the same result as to a partnership of hundreds. No such intent or effect may be lighty imputed to any legislation even under the tremendous scope of war powers, and the court will not strain the clear language of a statute to produce an unintended and inequitable result. (*Surace* v. *Danna,* 248 N. Y. 18, *supra.*)

For the reasons above stated, it appears that all of the plaintiffs are not entitled to the return of this deposit and, since this court is without jurisdiction to determine the respective rights of partners in a joint fund as between themselves, the plaintiffs' motion for summary judgment must be denied and the motion of the defendant to dismiss the complaint be granted. The defendant's answer contains no allegations which would entitle it to a judgment of $300 as so demanded, and the defendant's motion is granted only to the extent of dismissing the complaint, such dismissal of course being without prejudice to any further action or proceeding on the part of any of the plaintiffs which may be proper.