492

## Hummel et ux. v. Sheehan et ux.

*Benjamin H. Levintow*, for petitioners.

*I. Jerome Stern*, for defendants.

CRUMLISH, J., January 24, 1945.—This matter is before us on plaintiffs' petition for leave to enter judgment by confession under the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended by the Act of 1942.

Plaintiffs are the owners of premises situate at 580 East Rosalie Street, Philadelphia, which is now occupied by the defendants, husband and wife. Plaintiffs acquired title thereto on October 28, 1944. Codefendant Edward Sheehan, who is 44 years of age, is a captain in the United States Army, Engineer Corps, and is at present stationed somewhere in the South Pacific war zone; he entered the armed service about 2½ years ago. Defendants have an only son, 21 years of age, who is in the Navy and is consequently absent from the family domicile. Elizabeth Sheehan, the other defendant, occupies the premises, with two nieces, by virtue of a written monthly lease executed between defendants and plaintiffs' assignor some years prior to Captain Sheehan's entrance into the Army and plaintiffs' purchase of the property. The lease provides, inter alia, for termination by either party giving 10 days' written notice at the expiration of a monthly term.

Plaintiffs desire to occupy the premises as a dwelling. Therefore, in accordance with local regulations, a certificate of authority to maintain eviction proceedings was obtained from the Office of Price Administration. In addition, plaintiffs on December 9, 1944, gave defendants written notice as stipulated in the lease. (The sufficiency of this notice is questioned by defendants but we pass it by at this time because we prefer dealing with the instant problem in the light of the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940.) Notwithstanding, defendants have not vacated the premises. Hence, this petition for leave to enter judgment by confession.

Section 300 of article III of the Soldiers' and Sailors' Civil Relief Act of October 17, 1940, 54 Stat. at L. 1178, as amended by the Act of October 6, 1942, 56 Stat. at L. 771, 50 U. S. C. §530, provides:

"(1) No eviction or distress shall be made during the period of military service in respect of any premises for which the agreed rent does not exceed $80 per month, occupied chiefly for dwelling purposes by the

wife, children, or other dependents of a person in military service, except upon leave of court granted upon application therefor or granted in an action or proceeding affecting the right of possession. . .

"(3) Any person who shall knowingly take part in any eviction or distress otherwise than as provided in subsection (1) hereof, or attempts so to do, shall be guilty of a misdemeanor, and shall be punishable by imprisonment not to exceed one year or by fine not to exceed $1,000, or both."

By reason of the above provisions of the act, application to this court is required for further disposition. The monthly rental of the premises is $42.50 and they are occupied by Elizabeth Sheehan, the wife and mother of service men, for dwelling purposes. All the factors contemplated by the act are herein present.

The benefits of the act may be extended to Elizabeth Sheehan on the record before us. Section 306 of the 1942 amendment, 50 U. S. C. §536, provides:

"Dependents of a person in military service shall be entitled to the benefits accorded to persons in military service under the provisions of this article upon application to a court therefor, unless in the opinion of the court the ability of such dependents to comply with the terms of the obligation, contract, lease, or bailment has not been materially impaired by reason of the military service of the person upon whom the applicants are dependent." See Nassau Savings & Loan Assn. v. Ormond et al., 39 N. Y. S. (2d) 92, 93 (1942).

The testimony at the hearing of this matter disclosed that Elizabeth Sheehan has diligently sought and is still seeking suitable housing accommodations. She is registered with various real estate agents. These agents have informed her that their waiting lists are large and so in excess of the supply of available houses that they are unable to promise results. In fact, one agent has so many prior applicants that he refused to even register Elizabeth Sheehan. As a result of this mental strain, her health was impaired and it became

necessary for her to leave her defense job. In is thus evident that we are confronted with a very unfortunate situation—a situation which will become more perplexed and intensified with the continuance of the present world conflict. The instant case is particularly regrettable because the actions of the parties are obviously prompted by necessity and not by spite or ill-feeling.

Section 100 of article I of the act, 50 U. S. C. §510, defines its purpose as follows:

"In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force."

Thus, it is apparent that the underlying purpose of Congress in passing the Soldiers' and Sailors' Civil Relief Act of 1940 and its amendment of 1942 was prompted by at least two considerations: first, to protect persons in military service and their dependents from injury or prejudice to their civil rights occasioned by the military service; and, second, to relieve thereby service men from mental strain and distress so that they will be able to devote their entire energies and efforts to the military needs of the nation: Commonwealth v. Rizzuto, 45 D. & C. 334 (1942); Hunt v. Jacobson et al., 33 N. Y. S. (2d) 661, 178 Misc. 201 (1942); Meyers v. Schmidt et al., 46 N. Y. S. (2d) 420, 181 Misc. 589 (1944); Patrikes et al. v. J. C. H. Serv-

ice Stations, Inc., 41 N. Y. S. (2d) 158, 180 Misc. 917 (1943).

"The judicial function to be exercised in construing a statute is limited to ascertaining the intent of the legislature therein expressed": per Justice Brandeis in Ebert et al. v. Poston, 266 U. S. 548, 554 (1924), in passing on the Soldiers' and Sailors' Civil Relief Act of 1918, as amended.

In Hunt v. Jacobson, et al., supra, the court said (p. 663):

"Statutes enacted for the benefit of persons engaged in military service are a recognized institution in this country, and, being remedial, are to be construed liberally (Greening v. Sheffield, Minor, Ala., 276), possessing as they do, attributes of privilege and exemption (Land Title & Trust Co. v. Rambo, 174 Pa. 566, 34 A. 207), and it has been held that even in the absence of such a statute public policy demands the recognition of such exemption: Land Title & Trust Co. v. Rambo, supra." See Davis, Exec., v. Brown, 46 D. & C. 123, 130 (1942), and cases therein cited.

Thus, a proper application of the Soldiers' and Sailors' Civil Relief Act of 1940, even without the subsequent amendments thereto, required that all doubts be resolved in favor of the service man. The amendments of 1942 afford still more civil relief to those in military service and their dependents. See note in 28 American Bar Association Journal 797 (1942).

The discretion to construe the laudable aims and purposes of the Soldiers' and Sailors' Civil Relief Act is vested in the trial courts: Boone v. Lightner et al., 319 U. S. 561 (1943). This discretion is conferred by subsection 2 of section 530, 50 U. S. C. §4, which provides that upon application the court "may stay the proceedings for not longer than three months" or "make such order as may be just". See note in 27 Marquette L. R. 59, relative to eviction cases. The act was not intended as a blanket moratorium on all litigation affecting service men. Proper application requires an over-

all analysis of the questions involved and, thereafter, an equitable determination. In a recent opinion (Davis, Exec., v. Brown, supra, at page 135) we stated our views to be:

"In a final word, we wish to add that we are not blind to the equities of the plaintiff in this case. Nor has our decision been reached without difficulty. It is important on the one hand that the Soldiers' and Sailors' Civil Relief Act should not be treated as a blanket moratorium on all litigation against service men. To thus enforce the act might prove a boomerang (See Smith, 'The Soldiers' and Sailors' Civil Relief Act' in Practice, 3 Mass. L. Q. 228, 229 (1918)), in that all credit for men in service and for their dependents would be destroyed. And on the other hand, these are times when some sacrifices must be made, and it is the duty of our economic society to persons called into the service that they be made to feel that their homes and businesses upon which they are dependent are afforded some protection during the war. In the light of these conflicting factors we shall examine in detail the facts of each individual case coming before us. The equities must be carefully weighed, and the act administered as an instrument to accomplish substantial justice." See also opinion by Judge Eagen, in the Court of Common Pleas of Lackawanna County, in First Federal Savings & Loan Assn. of Scranton v. White et ux. (No. 2), 49 D. & C. 169, 172 (1943); 47 Dickinson L. R. 129.

We are fully mindful of plaintiffs' normal desire to obtain possession of their home. Dissatisfied with their present housing accommodations, plaintiffs purchased the property at 510 East Rosalie Street with intent to presently occupy it. Unfortunately, such possession would result in great hardship to Elizabeth Sheehan since, despite her diligent efforts, she has been unable to find another house to which she can move. Knowledge of his wife's plight will undoubtedly cause Captain Sheehan that mental distress and strain sought to be

avoided by Congress in enacting the Soldiers' and Sailors' Civil Relief Act.

The lack of sufficient housing in this area is a matter of common knowledge. Because of the constant influx of workers into this city and its surrounding districts the housing problem is becoming intensified. This situation is developing into serious proportions. Great numbers of tenants are required to move because their homes have been purchased by others. In this maelstrom, the man in the armed service is at an economic disadvantage and necessarily requires the protection of the law. In the recent United States district court case of Arch v. Berson, civil docket M 1086 (October 16, 1944), a situation similar to that herein involved was decided. Judge Welsh, in delivering the opinion of the court, said:

"The present trends indicate a return to the condition that existed during the first World War when the order was 'Buy or Move.' Those of us who are old enough remember very keenly the hardship and injustice of such procedure. If the instant case was between two civilians, this court could not be officially concerned with the question of policy. But inasmuch as defendant is in the armed service of his country it does not seem to me that it would be a wise, humane or practical exercise of discretion to order the eviction of this woman under the circumstances, much as we sympathize with the legitimate desire of the plaintiff to obtain possession of the home that she has purchased. We accordingly decline the order of eviction."

We are in accord with the above view. To hold otherwise would be to frustrate and disregard the purposes of the Soldiers' and Sailors' Civil Relief Act. The equities favor defendants and, for the duration of the present emergency, so long as the agreed rentals are paid, this court will not decree the leave to evict. See Jonda Realty Corp. v. Marabotto, 34 N. Y. S. (2d) 301 (1942).

The prayer of the petition is denied.